Hitchcock, C. J.
The bill of exceptions in this case shows that on the trial in the court of common pleas, the plaintiffs offered in evidence the original policy of insurance, described in the declaration, and which, with part of the act of incorporation of the defendant, is recited in the bill of exceptions. This policy of insurance is in terms similar to the ordinary policies of mutual insurance companies. The property insured is an oil-mill and machine shop, insured at $800, situate at Dayton, and the lot on which situated, is particularly described. The application of the plaintiffs is referred to for a more particular description, and as part of the policy. The application so referred to, and made part of the policy, is also made part of the bill of exceptions. From this it appears that the property, for the insurance of which the application was made, was represented as the property of Philips, Deckel & Co., and that to the question as to “ who holds the fee *153 of the land on which said buildings stand, whether incumbered by •mortgage,'and to what amount,” the reply was, “ Philips, Beckel, Edgar and Philips, leased perpetually to Johnson & Douglas”— the applicants—and insured, thereby stating the fee to be in themselves, although subject to a perpetual lease, and no other incumbrances are named. It is unnecessary to insert hei’e the sections of the statute referred to in the bill of exceptions, as they will be referred to hereafter. The by-laws of the company, attached to the policy, were made part of the bill. It was admitted that the buildings intended to be insured were destroyed by fire, on or-about March 26, 1848, and proven that necessary preliminary steps had been *taken to charge the defendants, that domand of payment, etc., had been made. The insurance was for five years.
Defendant gave in evidence the original application before referred to, and also transcripts from the record of certain deeds, which are also made part of the bill. These records show, first, a deed from Philips, Beckel & Co. to the “Dayton Hydraulic Company,” an incorporated company, for the lands on which the insured property was situated, bearing date June 18, 1846.
Second. A lease from the “Dayton Hydraulic Company ” to Johnson & Douglas, for the same premises, for ninety-nine years, renewable forever. This instrument bears date July 9, 1847.
Tim'd. Two deeds of mortgage from Johnson & Douglas, dated the same 9th day of July, upon the same premises, to the “ Dayton Hydraulic Company:” the one to secure the payment of two notes for two hundred dollars each—one due in one, and the other in two years; and the other to secure the payment of two notes of like amount, one due in three, and the other in four years.
The plaintiffs then proved that they were the sole stockholder’s in the “ Dayton Hydraulic Company.”
In the bill of exceptions, the reasons are assigned which induced the court to find the issue joined in favor of the defendant, but with this, this court has nothing to do. The simple question for us to decide is, whether, under the circumstances disclosed in the bill of exceptions, the plaintiffs were entitled to a verdict and judgment. If they were, then the court of common pleas erred in overruling the motion for a new trial. If the plaintiff were not entitled to a verdict and judgment, then there is no error.
It is apparent that here was an insurance effected upon certain *154 buildings as the property of the plaintiffs, and represented by the plaintiffs, in their application, to stand upon land, the title to which in fee simple was in the plaintiffs. A recovery is resisted by the defendants, on the ground that the ^property was not in the plaintiffs, and the title to the land itself, upon which the building was situated, was not in the plaintiffs. On the part of the defendants, it is claimed that this application having been by express terms made part of the policy, the representation as to the title is a warranty, and to be treated as such. On the other hand, it is claimed that it is a mere representation, and although it may not be true in point of fact, still it can not effect the policy unless it relates to things material to the risk. Numerous authorities are cited by the plaintiff’s counsel, and perhaps if they are right in the position that this is a mere representation, the authorities cited might, in ordinary cases of insurance, establish their right to recover.
It must be remarked, however, that in most or all the cases referred to, the suits were against individual insurers, or against companies not mutual insurance companies, and when a case arises cither in favor of or against an incorporated company, we must look into the charter or act incorporating the company, to ascertain its rights, its privileges, as well as its duties, its liabilities, its responsibility. If a fire insurance company has a lien upon the land upon which the building insured stands, no matter how small, it would seem to be material, that the true situation of the property should bo made known', and that a false representation might with propriety be held to avoid the policy.
As to the question whether, in this case, the representation as to title was a warranty, we incline to the opinion that it was. It was made part of the policy, in express terms; but it is not, in fact, necessary to decide this question.
The “ Knox County Mutual Insurance Company ” was incorporated by act of the General Assembly, of March 14, 1838 (36 Ohio L. L. 288), “ for tho purpose,” as expressed in the first section of the act, “ of insuring their respective dwelling-houses, stores, shops, and other buildings,” etc., “ against loss or damage by fire,” etc. The second section provides that all persons who shall insure in said company shall ^become members thereof, and shall continue to be members as 'long as they shall continue to be insured.
*155 The sixth section, which is made part of the bill of exceptions, is as follows : “Every member of said company shall be, and hereby is, bound and obliged to pay his proportion of all losses or expenses happening or accruing in or to said company, to the amount of his deposit note, and no further; and all buildings insured by and with said assurance, together with the right, title, and interest of the insured to the lands on which they stand, shall be pledged to said company; and the said company shall have a lien thereon against the insured, during the continuance of his, her, or their insurance.”
By this section a lien is given to the company to secure the payment of assessments for losses, etc., not only upon the buildings insured, but upon the land upon which such buildings may stand. It is material, then, that before an insurance is made, the company should be truly informed as to the titles to both buildings and land. Upon that title depends their security; for it will not be contended, I apprehend, that the insurance would operate as a lien where the assured had no title. In a subsequent section it is provided that if, after insurance, the insurance shall alienate the property, the policy shall become void; and this, I suppose, upon the general principle that the insured must have an insurable interest, and that, if at the time the insurance is effected, he has such interest, but parts with it before the loss, he can not have an action upon the policy. In order to recover upon that policy, ho mutt have had an interest at the time of the insurance, and at the time of the loss.
Another section is recited in the bill of exceptions. It is the ninth of the act, and is as follows: “ The company may make insurance for any time not exceeding ten years, and any policy of insurance issued by said company, signed by the president and countersigned by the secretary, shall be deemed valid and binding on said company in all cases where the assured has a title, in fee simple, unincumbered, to the building *or buildings insured, and to the lands covered by the same ; but if the insured have a loss estate therein, or if the premises be incumbered, the policy shall he void, unless the true title of the insured, and the incumbrances of the premises, be expressed therein, and in the application therefor.”
It is contended by counsel for defendant, that it is not material to the risk whether the insured owns the property, or whether his *156 application is in accordance with the truth or not; and therefore the policy can not be defended against, although a falso representation has been made.
But such is not the law by which this company, of which these plaintiffs were members by insuring therein, was incorporated. That provides that the policy shall be binding, provided the insured is owner in fee simple of the building insured, and the land upon which it stands. But the same law prescribes that if tbo insured does not so own the building and land, “the policy shall be void, unless the true title of the insured, and the incumbrances of the premises, be expressed therein, and in the application.” Now if the law, in a certain state of case, declares the policy void, how can this court declare it otherwise ?
In the application made by Philips, Beckel & Co. to the insurance company, they represented themselves to be the owners, in fee simple, of the buildings sought to be insured, and of the land upon which those buildings were situated. If they were such •owners, then the policy is binding upon the company, and the plaintiffs should have recovered a judgment. But were they such owners? It is scarcely jmetended. True, they had once been the owners; but months before this application was made they had conveyed the property to the “Dayton Hydraulic Company.” This company was a body corporate and politic, capable of suing and being sued, of receiving, holding, and conveying land, etc., created by an act of the general assembly of the state, of the date of March 1, 1845. The fee of the land was in this company, not in these plaintiffs. The policy, then, does not fall within the first part of the *ninth section of the act incorporating the “Knox County Mutual Insurance Company.”
Does it fall within the second clause of that section? In order that a policy may be held good under this last part of the section, it is necessary that the applicants, in making the application, not having the foe in themselves, should, in their application, state their “true title” and also “ the incumbrances;” otherwise the policy is void. This.they did not do. In fact, they had no title or interest, except as stockholders of an incorporated company, in which company the title was vested. This fact was not disclosed to, it was concealed from, the insurance comjjany. Besides, there was a mortgage upon this property, not to these plaintiffs, but to *157 the “Dayton Hydraulic Company.” This was an incumbrance, but was not disclosed.
But it is said that these plaintiffs wore the sole stockholders of the “Dayton Hydraulic Company,” and might therefore well insure the property of that company as their own individual property. We think not. We can find no authority sustaining any such principle, and no one is referred to. An execution upon a judgment against Philips, Beckel & Co. could not be levied upon the property of the “ Dayton Hydraulic Company.” Neither could an execution upon a judgmentagainstthe “Dayton Hydraulic Company” bo levied upon the individual property of Philips, Beckel & Co. In truth, the property of the hydraulic company is just as distinct from thedndividual property of these plaintiffs as would bo the individual property of Horatio G. Philips from that of Daniel Beckel.
In fact, these plaintiffs had no insurable interest in this property whatever. The fee was in another person ; not in a natural person, but an artificial person—a corporation. If they had any insurable interest, it was the stock which they held in the hydraulic company, and this they did not attempt to insure.
In the opinion of this court, the court of common pleas did not err in refusing to grant a new trial, and the judgment of the Supreme Court is affirmed, with costs.