DELOS D. PIER, Respondent, v. BENJAMIN HANMORE, Appellant.

Where an annual report is filed by a manufacturing corporation which in form complies with the requirement of the Manufacturing Act (§ 12, chap. 40, Laws of 1848), the trustees are not subject to the liability imposed by that act for a failure to file a report, although the one filed is untrue.

If the report filed be untrue, and constitutes a false representation, it renders liable only the trustees who signed it, and who signed knowing it to be false.

*It seems* that where the report states the amount of capital paid in, without stating that a portion was paid for in property, as is required by the act of 1853 (Chap. 333, Laws of 1853) when such is the case, the fair import of the statement is that the payment was in cash, as was required by the original act (§ 14).

Such a report, therefore, where a portion of the stock was issued in payment for property, is false, on a strict view of the statute, and the misrepresentation is material within the meaning of the provision of said Manufacturing Act (§ 15), making the officers signing a report which is "false in any material representation," knowing it to be false, liable for the debts of the company.

The words, however, "knowing it to be false" mean a willful misrepresentation, with actual knowledge of its falsity, not merely such constructive knowledge as can be imputed from the presumption that the officer signing knew the law and comprehended the precise import of the language used, when construed with reference to the statute.

To charge an officer, therefore, in such case, for the penalty so imposed, some fact or circumstance must be shown indicating that it was made in bad faith, or wilfully, not ignorantly or inadvertently.

Defendant as trustee of a manufacturing corporation signed a report stating that $36,500 of capital had been paid in : in fact, to defendant's knowledge when he signed, $25,000 of stock had been issued for property purchased, and only $11,500 paid in cash. In an action against him to enforce the liability imposed by said provision, *held*, that as it was not certified in terms that the amount stated had been paid in cash, and as it was only established by a process of reasoning that the statement imported a representation that it was so paid, if defendant signed believing he had the right to treat all the stock issued as representing paid-up capital, and without intent to evade the statute or to defraud any one, he did not sign knowing the report to be false within the meaning of the provision ; and so, that, in the absence of any evidence warranting a finding of bad faith or intention to deceive, or any fraudulent purpose whatever, defendant was not liable for the penalty.

The report as originally drawn stated : " Stock issued $36,500," the words
" stock issued" were erased and the words " capital paid in" written over
them ; this was in the handwriting of the notary before whom the report
was verified by the secretary of the company. The notary, as a witness,
could not recollect whether the signatures to the report were on it when
it was verified, but stated that from inspection of the paper he should
say they were, that he recollected making some change and was positive
that he only saw the paper at the time it was verified. Defendant testified
that to the best of his knowledge, when he signed the alteration had not
been made. The good faith of the transaction in the purchase of the
property was not attempted to be impeached. *Held*, that as the evidence
failed to show any motive or purpose to misrepresent or any guilty
knowledge of the inaccuracy of the report, defendant was not liable.

(Argued April 28, 1881; decided October 4, 1881.)

APPEAL from judgment of the General Term of the
Supreme Court, in the second judicial department, made
February 10, 1880, which affirmed a judgment in favor of
defendant entered upon a decision of the court on trial with-
out a jury.

This action was brought against defendant as one of the
trustees of the " Newburgh Lager Beer Brewery," a corpora-
tion organized under the General Manufacturing Act (Chap.
40, Laws of 1848), to recover a debt due from the corporation.

The complaint contained two counts, one charging a failure
of the corporation to. file any report for the year 1875, and
claiming a liability under section 12 of said act, the other
charging the signing of a report by defendant, which was
to the knowledge of defendant false in a material representa-
tion and claiming a liability under section 15.

The material facts are stated in the opinion.

*Samuel Hand* for appellant. The repeal of a statute of a penal
nature destroys all rights of action under it incurred while it was
in force. (*Butler* v. *Palmer*, 1 Hill, 324 ; *Curtis* v. *Leavitt*, 15
N. Y. 152, 229.) A report like the one in question is a good re-
port under the twelfth section of the act of 1848, and the defend-
ants cannot be held liable under that section. (*Bonnell* v. *Gris-
wold*, 80 N. Y. 128 ; *Whitney Arms Co.* v. *Barlow*, 68 id. 34.)

Ignorance of a statute requirement is proper to be considered in determining whether the statute has been willfully violated. There is no rule of law which conclusively presumes knowledge of the law as a fact, where that fact is important. (*Black* v. *Ward*, 27 Mich. 191; *S. C.*, 15 Am. Rep. 162, and note, 171; *Requa* v. *Mayor of Tewksbury*, L. R., 3 Q. B. 628.) An action against a trustee to subject him to personal liability for the debts of the company, for the causes set forth in the complaint in this action, is an action for a penalty or forfeiture, given by statute. (*Merchants' Bk.* v. *Bliss*, 35 N. Y. 412; *Wiles* v. *Suydam*, 64 id. 173; *Easterly* v. *Barber*, 65 id. 252.) The liability of the trustees has no relation to the actual loss or injury sustained by the party in whose favor the action is given. (65 N. Y. 255; *Whitney Arms Co.* v. *Barber*, 68 id. 34.) A cause of action which will not survive to or against the personal representative will not pass by assignment *inter vivos.* (3 Williams on Executors, 1831; *Bk. of California* v. *Collins*, 5 Hun, 209; *Zabriskie* v. *Smith*, 3 Kern. 332.) In such a case as this a judgment against the corporation is not even *prima facie* evidence of the debt. (*Miller* v. *White*, 50 N. Y. 137.)

*Chas. H. Searle* for respondent. The provisions of section 12 of chapter 40, Laws of 1848, as to the contents of reports being re-enacted in chapter 510 of the Laws of 1875, without the change of a word, such provisions are considered not as a new law, but as in force from their original enactment. (*Ely* v. *Holton*, 15 N. Y. 595; *Moore* v. *Mausert*, 49 id. 332.) Plaintiff's claim was in effect for a debt; as to him the statute is not penal but remedial. (*Palmer* v. *Conly*, 4 Denio, 374; affirmed, 2 Comst. 182; *Whitney Arms Co.* v. *Barlow*, 63 N. Y. 67; *The People* v. *Bd. of Supervisors of Westchester Co.*, 4 Barb. 64.) Laws that abrogate established rules do not have a retrospective effect unless clearly expressing such intention. (*Dash* v. *Van Fleck*, 7 Johns. 477; *Sayre* v. *Wisner*, 8 Wend. 661; *Berly* v. *Rampacher*, 5 Duer, 183.) The report made in this case was prohibited by section 2 of the

act of 1853, and so was illegal and void. (Sedgwick on Construction of Statutes, 69; 1 Kent, 467; Potter's Dwarris on Statutes, 536; *Mullaly* v. *Mayor*, 3 Hun, 661; *Cowan* v. *Village of West Troy*, 43 Barb. 48; *Brady* v. *Mayor*, 20 N. Y. 312; *N. Y. & Oswego R. R. Co.* v. *Van Horn*, 57 N. Y. 473; *Pratt* v. *Short*, 79 id. 437; *New York Firemans' Ins. Co.* v. *Ely*, 2 Cow. 678; *Crocker* v. *Whitney*, 71 N. Y. 161; *The State* v. *Fletcher*, 5 N. H. 257.) Where a penalty is imposed for doing an act, such act is deemed prohibited and therefore illegal. (1 Kent, 467; *Hallett* v. *Nixon*, 14 Johns. 273, 290; *Griffith* v. *Wells*, 3 Denio, 226.) Whether the report represents that the capital was paid in cash or not, it is a report that does not state the facts as required, and hence is prohibited and illegal and void and affords no protection to defendant. (*Dist. Township of Dubuque* v. *City of Dubuque*, 7 Iowa, 262, 276, 284; 1 Plowd, 206 *b;* 1 Kent, 467, marg. note *b;* Hob. 298.) Whether a statute is mandatory or not depends upon whether the thing directed to be done is the essence of the thing required. (Potter's Dwarris on Statutes, 224; Smith's Comm. 792; *Merritt* v. *Village of Portchester*, 71 N. Y. 309; *Hardman* v. *Bowen*, 39 id. 196.) It is presumed the legislature intended to make acts imperative in all cases where the object aimed at could not be obtained unless the act should be construed as imperative. (*Colt* v. *Eves*, 12 Conn. 243; Smith's Comm. 795.) The requirement in this case is new and is attached to a franchise newly conferred, and prescribes an act to be done on the exercise of that right. No such statute can ever be merely directory. (Potter's Dwarries on Statutes, 223; *Hardman* v. *Bowen*, 39 N. Y. 196; *Head & Armory* v. *Providence Ins. Co.*, 2 Cranch U. S. S. C. 127.) The report made was false in a material representation, and defendant having signed it knowing it to be false, is liable under section 15 of the act of 1848. (*Arthur* v. *Griswold*, 55 N. Y. 400; *Bonnell* v. *Griswold*, 80 id. 128; *Haviland* v. *Chase*, 39 Barb. 283.) Intent to deceive may be deduced from suppression of truth, as well as from suggestion of falsehood. (*Devoe* v. *Brandt*, 53 N. Y. 462, 465; 2 Green-

leaf on Evidence, 15; *Rex* v. *Woodfall*, 5 Burr. 2667.) In strict language capital cannot be paid in except in cash. (*People* v. *Com. Bk.*, 27 N. Y. 378; *Pier* v. *George*, 20 Hun, 210; *Arthur* v. *Griswold*, 55 N. Y. 400.) Construed in the light of the statutory provisions on the subject, the report plainly contains a representation that the capital has been paid in cash. (*Bonnell* v. *Griswold*, 80 N. Y. 128, 137.) The intent of the legislature in that part of the act of 1853 relating to reports was not simply to prevent a report stating that stock issued for property had been paid in cash. Such a report would have been false independent of the act of 1853. (*Quimby* v. *Waters*, 27 N. J. 296; 28 id. 533; *Haviland* v. *Chase*, 39 Barb. 283.) Suppression of truth that a party is under legal obligation to disclose is fraud. (Story's Eq. Jur., §§ 204, 207; 53 N. Y. 462, 465.) A claim against a trustee is assignable. (*Pier* v. *George*, 14 Hun, 568; 17 id. 207; *Bolen* v. *Crosby*, 49 N. Y. 183; *Bonnell* v. *Wheeler*, 1 Hun, 322.) Knowledge of the law is presumed. (*The People* v. *Brooks*, 1 Denio, 457; *Barlow* v. *The United States*, 7 Pet. 494; *Smith* v. *Brown*, 1 Wend. 231.) A violation of law is presumed to be willful. (*The People* v. *Brooks*, 1 Denio, 457.) The liability of stockholders is a tangible security to creditors. (*Weeks* v. *Love*, 50 N. Y. 571.

RAPALLO, J.    This action, in so far as it is based upon an alleged violation of section 12 of the General Manufacturing Law of 1848, cannot be maintained. The liability imposed by that section is for the failure of a manufacturing corporation to make, publish and file, within the time prescribed, a report "which shall state the amount of capital, and of the proportion actually paid in, and the amount of its existing debts;" and for such failure of the corporation, all the trustees are made liable. In the present case there was no such failure on the part of the company. It did, within due time, make a report which, in form, complied with the statute, stating as follows: "Capital stock, $60,000; capital paid in, $36,500; amount existing debts, $30,130.24." This report covered all the points

required by section 12 and, if true, was a full compliance with the statute.   It is objected by the plaintiff that it was not a valid report, because, in point of fact, only $11,500 of the capital had been actually paid in, and the residue $25,000 had been issued for property purchased by the company ; and chapter 333 of the Laws of 1853 required that such stock should not be reported as issued for cash paid in to the company, but should be reported according to the fact.   This objection relates to the truth of the report, and not to its sufficiency as a formal compliance with the statute.   If it were tenable it would render all the trustees liable for the falsity of the report, including those who did not know that the capital represented as having been paid in had not all been paid in to the company in cash, and even those who had not signed the report.   There is nothing on its face to show that any property had been purchased or stock issued under the act of 1853, and the fair import of the statement that $36,500 of capital had been paid in was that it had been paid in to the company in the manner required by the act.   If this statement was untrue and constituted a false representation, it rendered liable only the trustees who signed the report knowing it to be false.   But the misstatement was not equivalent to an entire failure of the company to make the required report, which would render all the trustees liable.   The case of *Bonnell* v. *Griswold* (80 N. Y. 128) is decisive of this point.

The trial judge has, however, found that the defendant, one of the trustees who signed the report, knew at the time that only $11,500 of capital had been paid in in cash, and that of the $36,500 reported as paid in, $25,000 had been issued in payment for property purchased by the company.   The complaint charged that the representation in the report as to the amount of capital paid in was false, and the judge found that the report was in violation of section 15 of the act of 1848, which is as follows :   "Sec. 15. If any certificate or report made, or public notice given by the officers of any such company, in pursuance of the provisions of this act, shall be false in any material representation, all the officers who shall have

signed the same, knowing it to be false, shall be jointly and severally liable for all the debts of the company, contracted while they are stockholders or officers thereof."

The questions, therefore, on which the case turns are whether the statement in the report as to the amount of capital paid in constituted a material representation, and was false, and whether the report was signed by the defendant, knowing it to be false within the meaning of section 15.

The materiality of the representation scarcely admits of question. The purpose for which the annual reports are required to be published is that the public may be correctly informed of the financial condition and resources of these companies, in order that they may judge of the credit to which they are entitled; and it cannot be doubted that the amount of actual cash capital invested in their business is a most material element in such an inquiry. The statute, therefore, requires that the amount of capital actually paid in be stated in the report. By section 14 of the act of 1848 it is declared that nothing but money shall be considered as payment of any part of the capital stock, and a statement that a certain amount of capital stock has been paid in, when contained in a report made in pursuance of the statute, upon a careful consideration of its provisions, necessarily imports that it has been paid in money, no other mode of payment being recognized. By the supplementary act of 1853, the trustees are authorized to purchase property necessary to the business of the company, and issue stock to the amount of the value thereof in payment therefor, which stock is declared to be full stock, not liable to further calls. But stock so issued cannot be regarded as issued for capital paid in, and the act of 1853 specially provides that in all reports of the company to be published, such stock shall not be stated as issued for cash paid in to the company, but shall be reported in this respect according to the fact. Even in the absence of this provision it would be manifestly incorrect to report the nominal amount for which such stock was issued, as capital paid in to the company, especially

in view of the provision of section 14, that nothing but money shall be considered as payment of any part of the capital.

But the express prohibition of the act of 1853 prevents any possible misunderstanding as to the meaning of the term capital paid in, and makes it clear that a statement in a report published under the Manufacturing Law, that a certain amount of capital has been paid in, must, on a strict view of the statute, be regarded as a representation that such capital has been paid in in cash, unless it is specified that the alleged payment consists of the issue of stock for property purchased.

I think, therefore, that it is impossible to escape the conclusion that the report in question contained an untrue representation as to the amount of capital paid in, and that this representation was material.

But the important question still remains whether the defendant signed the report "knowing it to be false," within the meaning of the statute. It is admitted that he knew that only $11,500 had been paid in cash, and that $25,000 of the stock had been issued for property purchased, and therefore he knew that $36,500 had not been paid in cash. But he did not certify in terms that that amount had been paid in cash, and it is only by a process of reasoning that it is established that the statement imported a representation that it had been so paid. There is no evidence that the statement was made with any fraudulent intent, or that he did not consider the property purchased as fully worth the amount of stock issued in payment therefor. The act of 1853 declares that stock so issued shall be full stock, and if, believing that he had the right to treat all the stock issued, as representing so much paid-up capital, and without any intent to evade the statute or to defraud any one, he signed the report under that belief, did he incur the penalty?

We are of opinion that the words "knowing it to be false" import a willful misrepresentation, with actual knowledge of its falsity, and not merely such constructive knowledge as can be imputed from the presumption that the officer signing the report knew the law and comprehended the precise import of

the language used, when construed with reference to statutory provisions. In the absence of the provisions that nothing but cash shall be considered as payment of capital, and that if stock is issued for property, it must be so specified, a general statement that so much capital had been paid in would not, in common parlance, be very far from correct, even though the capital had not been all paid in cash.

To charge the officer with the severe penalty imposed for signing a false report, knowing it to be false, some fact or circumstance must be shown indicating that it was made in bad faith, willfully, or for some fraudulent purpose, and not ignorantly or inadvertently; and this is a question of fact which must be passed upon before the liability can be adjudged.

In *Waters* v. *Quimby* (27 N. J. Law, 296; affirmed in error, 28 id. 533), twelve persons owning a factory, patent-rights, tools, etc., which had cost them $36,000, formed themselves into a corporation and transferred the entire property to it at a valuation of $252,000, for which stock was issued to them. It appears that they went through the ceremony of paying in the money for the stock and drawing out their proportions of the purchase-money, and the officers then filed a certificate that the capital stock had been paid into the treasury in cash. In an action for making a false certificate, the court submitted to the jury the question whether the transaction was merely colorable and resorted to for the purpose of a formal compliance with the statute, and the jury found for the plaintiff. In reviewing the judgment, the court say, that whether there was fraud in the transaction was a question peculiarly for the jury, and that it might perhaps be maintained that the acceptance by the company from a third party of property necessary for its operations, at a fair value, in exchange for stock, is a payment in cash within the meaning of the statute, and that the payment to the corporation of the price of the stock, and the repayment of the money in purchase of the property would not vary the transaction; but that conceding that the law would admit of that latitude of construction, the transaction before the court was of a totally different character. In

that case it will be seen the recovery was sustained on the ground of *mala fides*, although the penalty is imposed by the New Jersey statute for merely making a false certificate, and the words "knowing it to be false" are omitted.

But in Massachusetts the language of the statute is identical with that of section 15 of our statute, and it is there held that bad faith must be shown. In *Stebbins* v. *Edmands* (12 Gray, 203), which was an action for making a false certificate that the capital ($130,000,) had been paid in, it appeared that only $40,000 had been paid in cash and $90,000 of stock had been issued in part payment for an exclusive license under a patent. The plaintiff, however, admitted upon the trial that the defendants, when they signed the certificate, believed the right under the patent to be worth $100,000. They paid the inventor therefor $10,000 in money and $90,000 in stock. On these facts the court directed a verdict for the defendants, and in affirming the judgment in the Supreme Court, BIGELOW, J., commenting upon the words of the statute, "knowing it to be false," observed that it was not enough to show that the certificate did not contain the exact truth, according to the strict legal interpretation of the statute, but that it must be made to appear that it was wilfully false; that is, made intentionally, with a purpose to deceive, and that the scienter or guilty knowledge intended by the statute, must be equivalent to *mala fides* in making the certificate. It is proper to observe that the statute in force in Massachusetts, when this decision was made, did not declare that nothing but cash should be considered as payment of capital, nor did it require that if stock was issued for property, the fact must be stated in all reports, etc. The only provision on this subject was that a note or obligation of any stockholder, secured by pledge or otherwise, should be considered as payment of any part of the capital stock; but, notwithstanding the difference in the statutes, the construction put upon the term, "knowing it to be false," is quite applicable to the present case, the statute in other respects being similar to ours. (R. S. [Mass.], ed. 1845, chap. 38, §§ 13, 16, 17, 24, 28.) Where the report is false in a material point,

and plainly proven to have been known so to be to the officer signing it, it can hardly be necessary to prove the purpose for which the misrepresentation was made, or that any particular fraud was intended, as, if a trustee should knowingly state that a larger amount of capital had been paid in than had in fact been paid, or state the indebtedness of the company at less than the actual amount. But when the knowledge of the trustee is not directly proven, but is matter of inference, the existence of a guilty motive or purpose may be material to establish the scienter. In determining whether the statute has been wilfully violated, something more must be shown than a want of strict compliance with its terms. (See *Black* v. *Ward*, 27 Mich. 191; *S. C.*, 15 Am. Rep. 162, note; L. R. 3 Q. B. 628.)

The present case is entirely destitute of any evidence which would warrant a finding of bad faith, or intention to deceive, or any fraudulent purpose whatever. The year previous (1874) the defendant had signed a report drawn in conformity to the statute, specifying that $12,000 of the stock had been issued for cash paid in, and $25,000 for property. The report for 1875, as originally drawn, stated "stock issued, $36,500." The words "stock issued" were erased by drawing a line through them, and the words "capital paid in" written over them. The words "stock issued" were in the handwriting of Mr. Leslie, the secretary. He testified that he could not tell whether the alteration was made before or after the signatures were made. That his recollection was a blank as to that. The report was sworn to by Leslie before Mr. Kerr, a notary. He testified that the words "capital paid in" were in his handwriting; that Mr. Leslie brought the paper to him, and he could not recollect whether the signatures were on it at that time, but from an inspection of the paper he should say they were on it when it was brought to him; that witness remembered making some change in the paper. He is positive that he only saw the paper at the time it was verified, and he knows no one was present at that time besides Leslie.

The defendant testified that the paper was brought to his store and signed by him there ; that to the best of his recollection, at the time he signed it, the words " stock issued " had not then been erased and " capital paid in " interlined ; he recollected both reports, but did not recollect whether both were alike, and could not recollect the contents of either.

This is all the testimony on the subject of signing the report. The fact of its execution was admitted in the pleadings, and consequently was not disputed on the trial; but the testimony entirely fails to show any motive or purpose to misrepresent, or any guilty knowledge of the falsity, or rather inaccuracy, of the report. The evidence fails to show that the property purchased was over-valued, but, on the contrary, it shows that it was bargained for and a reduction in price obtained from $40,000 to $25,000, and the good faith of the transaction is not attempted to be impeached. The report seems to have been signed heedlessly and carelessly, but no willful misrepresentation was proven. The statute is highly penal. It subjects the offender to all the debts of the company contracted while he is a stockholder or officer, without regard to the amount of his stock and without any right of contribution such as is provided for in the case of an entire omission to make a report, and we think that it is intended to punish, not a mere act of negligence or ignorance, but only an intentional misrepresentation. It contemplates that erroneous reports may be made, but punishes only the officers who sign them, knowing them to be false.

On this ground the judgment should be reversed and a new trial ordered, costs to abide the event.

All concur.

Judgment reversed.