Spear, J.
A large amount of money is involved in the decision of this case, and many persons are interested in the result. With it were argued and submitted two cases of Executors of Reuben Springer, deceased, v. The Plaintiff in Error, brought in the court below to recover back taxes upon similar stocks. Some seven other cases, decided in the superior court, of like character, are also to depend upon the event of this case. Having in mind these facts, quite full consideration has been given the case by the court, and, impressed with the practical importance of the questions involved, more than the usual space is given to it in this report.
That the stock of the railway company is taxable against the shareholders in this state, it being a foreign corporation, though having property within the state on which it pays taxes here, was established by the decision in Insurance Company v. Ratterman, 46 Ohio St. 153, decided at January term, 1889.
The principal question at issue involves a construction of section 2781, of the Revised Statutes, and the chief point of dispute relates to the true meaning of the word “ false.”
This section was amended April 14, 1886, but the change in no way affects the questions made by the record. As it now stands, that section reads as follows:
“ See. 2787. If any person whose duty it is to list property or make [a] return thereof for taxation, either to the assessor or county auditor, shall, in any year or years make a false return or statement, or shall evade making a return or statement^ the county auditor shall, for each year, ascertain, as near as practicable, the true amount of personal property* moneys, credits and investments that such person ought to have returned or listed, for not exceeding [the] five years *482 next prior to the year in which the inquiries and corrections provided for in this and the next section are made; and to the amount so ascertained, for each year, he shall add fifty per centum, multiply the sum or sums thus increased by said penalty by the rate of taxation belonging to said year or years, and accordingly enter the same on the tax lists in his office, giving a certificate therefor to the county treasurer, who shall collect the same as other taxes.”
The question mainly argued is: Were the returns, or any of them, made by the defendant to the assessor, false returns within the meaning of this section ? Necessarily, this is, in great measure, a question of fact, and to the end that this court may correctly apprehend the facts, it is asked that we review the findings of the trial court in the light of the evidence, the claim being that the findings are against the weight of the evidence.
Without denying to itself the right to review the evidence upon petition in error, this court has heretofore declined to examine the evidence with a view of determining whether or not the trial court erred in its decision upon the weight of the evidence. In Damarin v. Huron Iron Company, 47 Ohio St. 590, the court uses this language: “ We might, upon the evidence in this case, have arrived at a different conclusion from the court below as to whether there was any actual intention on the part of the company to continue business after the execution of these mortgages. There are a number of things in the evidence that might be regarded as casting a doubt upon this question. Still it is not the practice of this court to weigh the evidence, but to accept the facts as they have been found by the court in which the evidence was heard.” See also, Ford v. Osborne, 45 Ohio St. 1. Following the well established precedent, therefore, we are, in this case, to take the facts as found by the trial court.
Accepting the findings as truly setting forth the facts, were the returns false ? In support of the contention of plaintiff in error it is urged that the word “ false ” is to be taken as implying simply the opposite of correct, or true, *483 while the defendant in error insists that the word, as used in the statute, necessarily implies that which is not only untrue, but is designedly untrue, the result of an intent to deceive. Of course, no one would doubt that the latter definition satisfies, to the fullest extent, the terms of the statute ; does the former ?
There is abundant authority among lexicographers for either definition. As used here, should the word be given a broad meaning, or should we seek a more restricted meaning ? It is to be borne in mind that the statute, while not strictly penal, is of that nature, as well as remedial. It is elementary, we suppose, that remedial statutes which prescribe penalties or forfeitures, though not to be construed strictly as criminal statutes are construed, nevertheless will not receive that liberal construction which would be given if .they were simply remedial. The legislature having used words admitting of more than one meaning, it is the court’s duty to ascertain, if it may, the sense in which the words were intended, the intention of the law-makers being in all cases the ultimate object sought in construction. Looking for the use of the word in a legal sense, we find it given in 7 Am. & Engl. Enc. of Law, 661, as meaning “ something more than untrue; it means something designedly untrue, deceitful, and implies an intention to perpetrate some treachery or fraud.” In Abbott’s Law Dictionary, 478, under the head “ false,” it is stated: “ In the more important uses, in jurisprudence, of false and falsely, they usually import somewhat more than the vernacular sense of erroneous or untrue. They are oftenest used to characterize a wrongful or criminal act, such as involves an error or untruth, intentionally or knowingly put forward. A thing is called false when it is done, or made, with knowledge, actual or constructive, that it is untrue or illegal; or is said to be done falsely when the meaning is that the party is in fault for its error.” Putnam v. Osgood, 51 N. H. 192, gives construction to a statute rendering void, as against a subsequent attachment, the lien of any pledgee or chattel mortgagee who, on the officer holding the process demanding a statement of his account, rend *484 ers & false account. The opinion by Chief Justice Bellows, is full, well reasoned, and instructive. The holding is that such “ account is not necessarily false within the meaning of the statute, because, by mistake, it is made greater than the amount really due, provided the account is rendered in perfect good faith, and with all reasonable efforts to make it just and correct.” For applications of like definition as applied to the term “ false swearing ” in insurance law, see Maher v. Hibernia Insurance Company, 67 N. Y. 283; Franklin F. I. Company v. Updegraff, 43 Pa. St. 350; Franklin Insurance Company v. Culver, 6 Ind. 137; Marion v. Great Rep. Insurance Company, 35 Mo. 148; Mason v. A. M. A. A., 18 Up. Can. (C. P.) 19; and for full discussion of the question generally, see Derry v. Peek, 14 App. Cases (H. of L.) 337.
If we say that a statement which is simply not true, and which does not show design or culpable negligence, is false within the meaning of this statute, then it would seem to follow that the state has done that which is most unusual, to wit: prescribed a punishment in the nature of a penalty for an act of omission, which is but an innocent mistake on the part of the citizen. For, according to the terms of the section, the penalty of fifty per centum to be added by the auditor, necessarily follows the finding by him that the return made was a false return, or that the making of a return has been evaded. He “ shall for each year ascertain..... the true amount .... such person ought to have returned or listed.....and to the amount so ascertained he shall add fifty per centum,” etc. There is no discretion. The true amount of the property being found, the penalty is added with the same certainty that the tax itself is entered. Genin v. Auditor, 18 Ohio St. 534.
We are considering the language with a view of ascertaining the bearing of the section, taken as a whole, upon the meaning of the word “ false.” It has been held in Gager v. Prout, decided at this term, that as to years .prior to the amendment of the statute, the tax itself could, in a proper case, be collected, but that the penalty could not be added. *485 In other words, the penalty clause was separable from the remainder of the act. This did not read the penalty clause out of the statute. To put a proper construction on the act, to ascertain the meaning of the legislature, it is present to every intent and purpose, for “ the rejection of some of the provisions of a statute for unconstitutionality, will not vary the sense or meaning of its remaining provisions.” State v. Dumbaugh, 20 Ohio St. 174. The words of .the entire section, therefore, are to be considered. The law was intended to be permanent. That vice which is necessary to make a return false at one time is necessary at all times, and no different test can be applied in a case which involves taxes for years prior to the amendment of 1886, than to a case arising after that date. It follows that, whatever is a false return as to the penalty is a false return as to the tax without the penalty, and vice verm.
That the word “ false ” is used in a sense other than merely untrue finds support by a consideration of the context. The section includes as well those who “ shall evade making a return ” as those who “ make a false return,” and the maxim nosdtur a sociis is invoked. True, it is urged that the word “ evade ” here is synonymous with “ omit,” and hence gives color to the opposite construction. This, we think, is Avholly inadmissible, for the word, comparing the definitions of lexicographers, scarcely admits of any meaning, when applied to the act of a person, which does not involve a perverse or sinister element. We conclude that “ evade,” as here used, means to avoid by effort or contrivance. If we are correct as to this meaning, its use in conjunction with the word “ false,” has an important bearing upon the sense intended by that word, and tends strongly to the conclusion that “ false ” implies design, for it is difficult to conceive that the legislature would intend to impose a severe penalty upon one who, by an innocent oversight, omitted a portion of his property from his return, and at the same time wholly excuse another who omitted to return any property at all. And yet this certainly follows if a return erroneous, without fault is a “ false return.”
*486 In Insurance Co. v. Cappellar, 38 Ohio St. 560, the company disclosed the real facts to the auditor by returns on the blanks furnished, but deducted its re-insurance fund as a debit from its credits, and returned the balance for taxation. The auditor proposed to correct these returns under section 2781, for five years, and the suit was to enjoin this proposed action.
As made by the company, the statements were unquestionably erroneous. The claim was made in argument by the learned attorney-general, that the returns were false, and he argued as is urged here, that the word “false ” meant “not truethat the returns did not comply with the statute, and hence were “ false.” This was denied by counsel for the company, (now one of the eminent counsel for defendant in error in this case), who contended, as is here contended, that the returns were not “false,” inasmuch as there was no concealment, or intentionally false statements, and that the returns showed every item, and the auditor had full knowledge of their character. The information as to ownership was given the auditor on the returns; in the present case like information was given by the taxpayer verbally. The court held that the returns were not false within the meaning of the statute, and confined the judgment to the amount due as taxes for the current year, without penalty.
It is insisted that in section 2782, the term “ false statement ” is used as meaning simply a false or incorrect statement, as held in Champaign County Bank v. Smith, 7 Ohio St. 42, where the language of section 46 of the act of 1852 (now incorporated into section 2782) is construed. And, as a result, it is claimed that a like signification must be given to like language in section 2781, on the principle laid down in Rhodes v. Weldy, 46 Ohio St. 234, that “ where the same word or phrase is used more than once in the same act in relation to the same subject-matter and looking to the same general purpose, if in one connection its meaning is clear and in another it is otherwise doubtful or obscure, it is in the latter case to receive the same construction as in the former, unless there is something in the connection in which it is employed, plainly calling for a different construction.” A *487 full analysis of section 2782 is not necessary to the point we make. It is apparent on the surface that there is not full identity of subject-matter in the two sections, nor is the connection in which the term stands in one the same as in the other. In 2781, it is used, in effect, as the equivalent of “evade;” in section 2782, it is used apparently in contrast with “evade.” There is, therefore, manifestly, something in the connection in which the language is employed in section 2781, “plainly calling for a different construction.” And while the general subject-matter is the same, a special subject-matter, to wit: penalty, is present in one section and absent in the other. The two sections were originally passed at different dates, and were intended to accomplish, in part, different results. One is intended solely for the correction of errors, from whatever cause arising, the taxpayer being liable for more than simple taxes only in case it is shown that the return was made with intent to evade the payment of taxes, and that liability being for costs of correction only; the other to correct false returns only, and impose a severe penalty upon those who make them, thus punishing the wrongdoer and serving as a warning to others.
It is not doubted that the legislature had full authority to provide for an inquiry into past years, and to prescribe such conditions, as, in its wisdom, seemed proper for Sscertaining and placing upon the duplicate, taxes omitted to be returned for any cause, and there certainly would be no inequity, as between the state and the citizen, in opening up settlements for periods prior to the current year upon the ground of mere mistake. Such policy would but place the state in the same attitude towards its citizens as it places citizens in towards one another. But, had such been the purpose of the legislature, it seems natural to expect that that body would have employed plain, unequivocal terms, words admitting of but one meaning, and clearly expressive of the precise purpose intended. Our language is not lacking in words adequate to the expression of exact ideas. As we have already seen, the word “ false ” has a legal meaning, and we would suppose that if the legislature intended to use it in a more general *488 sense, such intention would have plainly appeared by the context. Stephenson v. Higginson, 3 H. L. Cases 686. The terms of the entire section, however, not only do not clearly indicate a purpose to provide for correction of errors in returns for past years for mere mistake, but, while admitting of dispute as to the real meaning, nevertheless, tested by ordinary rules, as applied to a statute where a penalty or forfeiture is imposed, fairly imply, as we think, a purpose to limit such corrections to cases where the taxpayer is shown to have been in fault; and the courts have no other duty than to give effect to that language.
An examination of the cases upon the proper construction of tax laws, cited by defendant’s counsel, fails to impress us that the conclusion of counsel is correct. The cases go to the extent of holding that revenue statutes are not to be regarded as penal, and therefore to be construed strictly, but are remedial in their character, and to be construed liberally to carry out the purposes of their enactment. This need not be disputed. But we discover no inclination in any of the decisions of the Federal courts to impose the penalties of the United States revenue laws upon the innocent. Indeed, the . purpose seems to be to refuse to do so except where the language of the law will fairly admit of no other result. This is illustrated tn the case of U. S. v. Bbls. Spirits, 2 App. (U. S.) 305. The syllabus is: “ Reve’nue laws inflicting penalties for their violation, are not to be construed strictly, nor with excess of liberality; but in such a manner, looking at their policy, purpose, spirit, and language, as will best effectuate the legislative intention. The courts will not construe a law imposing a forfeiture, as extending to property which, before seizure, has been sold to a person innocent of the of-fence by which the forfeiture is incurred, and who has purchased in good faith, unless the intention of Congress that the forfeiture should be absolute and instantaneous on the commission of the offense, be manifest and unmistakable.”
Upon a consideration of the entire statute in the light of the authorities, and having in mind the purpose to be accomplished by this section, as heretofore held by this court, *489 to wit: “not merely to afford a remedy for a recovery of wbat is due the state under its system of taxation, but also to secure honest returns by adding a penalty to the making of false ones,” we are led to the conclusion that, in order to be “ false ” within the meaning of section 2781, there must appear, if not a design to mislead and deceive, at least such culpable negligence in the making of a return as carries with it the consequences of intentional default. Culpable negligence may well be said to be present where a party, under obligation to make a true statement, states that which is false in fact, and which he has no sufficient reason to believe to be true. It is the duty of the resident property owner to return his taxable property for taxation. In the performance of this duty he must use diligence and care in acquiring knowledge from sources where information is obtainable. If he uses such care, and acts honestly, making his return in accordance with his best knowledge and belief, after using all reasonable means to obtain an intelligent belief, his return will not be false within the meaning of section 2781. But this belief must result from a careful effort to perform the duty. Blind reliance upon an indolent belief that one’s property is not taxable, without investigation, inquiry, or disclosure to the taxing officer, would show culpable negligence, as fatal to the claim of good faith and innocent purpose, as would a direct intent to deceive. With this construction we think the rights of both the state and the owner will be reasonably protected, and no injustice result to either paily. The citizen is held to a high degree of vigilance in the performance of an important duty, and yet is not visited with severe penalties by reason of an honest mistake. This conclusion is believed to be in harmony with the holdings in the following cases: Breitung v. Lindauer, 37 Mich. 217; Pier v. Hanmore, 86 N. Y. 95; Bonnell v. Griswold, 89 N. Y. 122; Wright v. Smith, 5 Esp. 203; Black v. Ward, 27 Mich. 191; and to be fully sustained by Del. Div. Canal Co. v. Commonwealth, 50 Pa. St. 399.
There is force, too, in the consideration that the duty to make proper return is not satisfied by a return honest when *490 made, but attaches to the taxpayer to such extent that if, before the return has been finally acted upon by the taxing officer, the party obtains knowledge that his return is incorrect, he should voluntarily correct it by a supplemental return, and that a failure to do this is, within the meaning of this section, an evasion which would authorize the auditor to add the penalty for the current year. He knows that unless such correction is made, the auditor, except he have information from other sources, will act on a return which is untrue, and the failure to speak, under the circumstances, may be regarded, in its nature, sivppressio veri.
Applying these conclusions to the case before us, what should the judgment be ? From the findings of fact we learn that, prior to the second Monday in April in the year 1881, the defendant took advice of eminent lawyers as to the taxability of the stock in question, and received opinions from them that it was not taxable under the laws of Ohio. During that month he informed the then auditor of Hamilton county that he owned such stocks, and discussed with him the question of their taxability. ' From a period long prior to this date, the auditor and boards of equalization of the county declined to take steps to compel returns of persons who, they knew, owned such stock; which action was approved by the auditor of state, and no instructions to the contrary were given by that officer prior to November, 1886. This conclusion of the taxing officers was generally known in the county of Hamilton, and the belief was practically universal in the county, for the period stated, that such shares were not subject to taxation. These facts were known to the defendant, and honestly entertaining the belief that the shares were not taxable, and having no intent to evade payment of taxes, he omitted the shares from his returns. Such, in brief, are the facts as found by the trial court. If the conclusion before stated as to what is necessary to constitute “ a false return ” be correct, it must be manifest that these facts do not show that the returns were “ false.”
As to the returns for the years 1881 to 1885, inclusive, there seems, therefore, no real question but that the judgment *491 below was right. As to the year 1886, there may possibly be room for doubt regarding the penalty. It is urged that if the return is true when made, it cannot be rendered false by what is learned afterwards. . Defendant’s return in April, 1886, was correct so far as it went. It did not include the railway stock. The trial court apparently thought there was evasion in not making voluntary correction. It was not necessary to find that the return itself was false. The court may have reasoned that, inasmuch as the defendant knew of the claim of the auditor shortly after November, 1886, that the shares ought to be returned, his failure to make voluntary correction was an evasion which rendered him liable to the penalty, and that his true disclosure, upon being cited some time afterward by the auditor, did not relieve him. The sixth finding of fact is consistent with this conclusion. This court is not prepared to say that the legal conclusion was erroneous.
The findings of fact further show that a number of the certificates representing stock owned by the defendant had been pledged as collateral security for loans, with power to the pledgees to cause a transfer of the stock to their own names, and, in case the loans should not be paid, to sell. It is insisted by defendant that such shares cannot be taxable in his name on the ground that they were not in his possession or under his control within the meaning of sections 2730, 2736 and 2737, Revised Statutes. We are of a contrary opinion. The books of the company showed the shares to be in the name of the defendant, and he was the real owner. He had the power to resume absolute control by paying off the indebtedness. It is not the policy of our law to assess taxes upon pledged property against the pledgee, and the language of the sections referred to will not, in reason, bear so literal a construction. Waltham Bank v. Waltham, 10 Met. 334; Tucker v. Aiken, 7 N. H. 113.
Other questions argued at length are rendered unimportant by reason of the conclusion reached on.the main question.
Acknowledgment is here made to counsel for their most thorough and elaborate argument of the case. The able briefs *492 thorough and elaborate argument of the case. The able briefs have been freely resorted to in the preparation of this opinion, and have materially lightened the labor of the court.
Finding no error in the record the judgment is

Affirmed.