SAMUEL BONNELL, Jr., Respondent, *v.* CHESTER GRISWOLD et al., Appellants.

The statutory liability imposed upon the trustees of a manufacturing corporation by the manufacturing act of 1848 (§ 12, chap. 40, Laws of 1848), for a failure of the corporation to make and file an annual report as prescribed, does not attach if a report is made and filed, in terms complying with the statute, although some of the material representations therein are untrue.

Nor does such penalty attach when the stock of the corporation has been issued in payment for property as authorized by the amendatory act of 1853 (§ 2, chap. 333, Laws of 1853), and this fact is not stated in the report as required by said act. (FOLGER and EARL, JJ., dissenting.)

The court will not imply a term into a statute for the purpose of extending or imposing a penalty; on the contrary a penal statute will be strictly construed.

*It seems,* that where the requirement of said act of 1853 is not obeyed, the report made is false and subjects the persons making it to the penalty imposed by the original act (§ 15), for the making of a false report. (DANFORTH, J.; CHURCH, Ch. J. and MILLER, J., concurring.)

A report made and filed by a manufacturing corporation, stated that the "capital stock has been paid up in full." *Held,* that this was equivalent to a statement that all the capital had been paid in, and so was a compliance with said provision of the act of 1848 (§ 12), that the report "shall state * * * the proportion actually paid in" of the capital.

The verification to the report was as follows: "Sworn to before me this 13th day of January, 1870, Charles W. Anderson, notary public, New York

county." The report was signed by the president of the corporation and was actually verified by him before a proper officer. *Held,* that the verification was sufficient.

The corporation was adjudged a bankrupt in November, 1870, and on January 3, 1871, its entire property passed into the hands of an assignee in bankruptcy. *Held,* that no report subsequent to that of January, 1870, was necessary.

(Argued January 23, 1880 ; decided February 24, 1880.)

APPEAL from judgment of the General Term of the Supreme Court, in the third judicial department, affirming a judgment in favor of plaintiff, entered upon a decision of the court on trial at Special Term.

This case is reported upon a former appeal in 68 N. Y., 294.

The nature of the action and the facts appear sufficiently in the opinion.

*Wm. C. Holbrook,* for appellants. The General Term erred in holding that Hoysradt's trusteeship terminated in November, 1869. (*Squires* v. *Brown,* 22 How. Pr., 44; *Chandler* v. *Hoag,* 2 Hun, 613; affirmed, 63 N. Y., 624; *Broughton* v. *Otis,* 21 id., 261; *McHarg* v. *Eastman,* 35 How. P., 205.) If Hoysradt's resignation did not take effect until May, he, nevertheless, ought not to be held in the Bonnell case, for the reason that Bonnell's claim was not then due or payable. (*Jones* v. *Barlow,* 62 N. Y., 202.) The General Term erred in holding that the report of 1870 was defective in not containing an affirmation that it was true, and in not showing by whom it was verified. (*Bernard* v. *Darling,* 1 Barb. Chy., 219; *Hunter* v. *Le Conte,* 6 Cow., 728; *Whitney Arms Co.* v. *Barlow,* 63 N. Y., 67.) Statutes creating penalties are to be strictly construed, and can only be extended where they would otherwise be rendered nugatory, or where otherwise there would be a failure of justice. (*Hasbrook* v. *Paddock,* 1 Barb., 625; *Bridgewater and Utica Plankroad Co.* v. *Robbins,* 22 id., 662; *Garrison* v. *Howe,* 17 N. Y., 466; *Chase* v. *N. Y. Cent. R. R. Co.,* 26 id., 525;

*Miller* v. *White*, 50 id., 139.) The *onus* was upon the plaintiffs to show that the report was false in a "material representation," and "known" so to be by the defendants when they signed it. (*Whitney Arms Co.* v. *Barlow*, 68 N. Y., 37; *Stebbins* v. *Edmands*, 14 Gray [Mass.], 203.) The suit brought by Bonnell cannot be maintained, for the reason that he was not an original creditor of the company, but derived his claim by assignment. (*Bank of California* v. *Collins*, 5 Hun, 209; *O'Donnell* v. *Seybert*, 13 Serg. & Rawle, 56; *Boughton* v. *Smith*, 26 Barb., 639, 640.)

*A. Pond*, for respondent. Three circumstances must concur in point of time to render a trustee of a corporation personally liable for debts, viz., the existence of the debt, the existence of the default in making the report, and the trusteeship. (*Shaler & Hall Quarry Co.* v. *Bliss*, 27 N. Y., 299, 300; *Chandler* v. *Hoag*, 2 Hun, 615; *Nimmons* v. *Tappan*, 2 Sween., 661; *Whitney Arms Co.* v. *Barlow*, 63 N. Y., 73.) All the defendants who acted as trustees and signed reports as such, are now estopped from denying that they were trustees in January, 1870, when the default occurred, and in March and June, 1870, when the debts in question were created. (*Easterly* v. *Barber*, 65 N. Y., 252, 262; *Reed* v. *Keese*, 60 id., 616; S. C., 5 J. & Sp., 269; *Deming* v. *Puleston*, 55 N. Y., 655; S. C., 3 J. & Sp., 309; *Sanborn* v. *Lefferts*, 58 N. Y., 179; 3 R. S. at large, 735, § 12; p. 736, § 14; Laws 1848, p. 57, §§ 12–14; Laws 1853, p. 705, § 2; *Boynton* v. *Hatch*, 47 N. Y., 225, 228; *Boynton* v. *Andrews*, 63 id., 93, 97; *Pier* v. *George*, 14 Hun, 568; *Whitney Arms Co.* v. *Barlow*, 63 N. Y., 63, 64.) The report was void because it was not signed by the president, Wheeler, in his own name. (*Walker* v. *The Bank*, 5 Sel., 582, 585.) It was void because not verified by the oath of the president or secretary of the company. (*Whitney Arms Co.* v. *Barlow*, 63 N. Y., 66; *People* v. *Sutherland*, 16 Hun, 192; *Brown* v. *Smith*, 13 id., 408.) The oath which purports to have been taken by some one, but by whom is not stated in the *jurat*,

is wholly void because there is no venue to the affidavit. (*Cook* v. *Staats*, 18 Barb., 407; *Vincent* v. *People*, 5 Park., 88, 101; *Lane* v. *Morse*, 6 How., 394; *Thompson* v. *Burhans*, 61 N. Y., 52, 63; *People* v. *Crawford*, 3 W. Dig., 462; *Cameron* v. *Seaman*, 69 N. Y., 402; *People* v. *Suffern*, 68 id., 326; *McFarren* v. *St. John*, 14 Hun, 387, 389.) This defect cannot be cured by oral evidence that the oath was in fact administered by a proper officer, if such was the fact. (*People* v. *Sutherland*, 16 Hun, 192.) The statement in the report that the capital stock was all paid up, without also stating that it was paid in lands, etc., was equivalent to stating that it was paid up in cash, and it is false. (*People* v. *Com. Board*, 27 N. Y., 378.) All the trustees are liable for all debts of the company existing when the false report was filed and all that accrued subsequently and before a true report, as the statute calls for, was made, filed and published. (*Bonnell* v. *Wheeler*, 3 N. Y. S. C., 557, 560; 68 N. Y., 297, 298, 299; *Case* v. *People*, 14 Hun, 403; *Pier* v. *George*, 14 id., 568; *Whitney Arms Co.* v. *Barlow*, 6 J. & Sp., 554; S. C., 63 N. Y, 62, 65; *Bonnell* v. *Wheeler*, 3 N. Y. S. C., 557, 560; *Haviland* v. *Chase*, 39 Bar., 283, 285; *Van Ingen* v. *Whitman*, 62 N. Y., 513, 520; *Durant* v. *Abendroth*, 69 id., 148, 152, 154; *McFarren* v. *St. John*, 14 Hun, 387, 389; *Getty* v. *Devlin*, 70 N. Y., 504; *Delemater* v. *Rhodes*, 2 Week. Dig., 540; *Boynton* v. *Andrews*, 63 N. Y., 93, 94, 95; *Schenck* v. *Andrews*, 47 id., 225; 73 Ms. 100; *Douglas* v. *Ireland*, 7 Week. Dig., 28; *Pier* v. *George*, 14 Hun, 568; *Bartholomew* v. *Bentley*, 1 McCook [Ohio], 37, 43; *Jones* v. *Barlow*, 62 N. Y., 203, 204; 6 J. & Sp., 142.) All the defendants, as a matter of law, are liable for conspiracy. (*Bartholomew* v. *Bentley*, 1 McCook [Ohio], 37, 43; *Tracy* v. *Yates*, 18 Bar., 156; *Came* v. *Brigham*, 39 Me., 41.)

Danforth, J. The plaintiff is a judgment creditor of the "Iron Mountain Company, of Lake Champlain," a corporation organized under chapter 40, of the Laws of 1848,

relating to the formation of corporations for manufacturing, and other purposes. The defendants were its trustees. The plaintiff sought by his complaint to render them liable for the payment of his debt, upon three grounds. *First,* An omission on the part of the company to make and publish a report in January, 1870, as required by section twelve of the act referred to. (Laws of 1848, chap. 40.) *Second,* The making and publishing by the defendants as such trustees, of a report " as and for a compliance with that section," but which was in fact false ; and *third,* that they conspired together, and organized the company for fraudulent purposes ; and " to deceive the public and the plaintiff," made the report in question; that he was deceived thereby, and induced to give credit to the company. The defendants answered, and among other defenses, put in issue all the allegations, upon which the above causes of actions rested. Upon trial at Special Term, the learned court found in their favor, upon the second and third grounds, but gave judgment against them, and in favor of the plaintiff upon the first ground or cause of action, viz. : the omission of the company to make the report required by the twelfth section of the act. The judgment was affirmed by the General Term, and we find from the opinion there delivered, that the decision was placed not only upon the ground taken by the Special Term, but also upon the form of the verification of the report. These two questions are then before us, and their answer depends upon a proper construction of the statute. Omitting words immaterial to the present inquiry, the section on which the cause of action rests, declares that every company incorporated under the act of 1848, *supra,* " shall annually, within twenty days from the first day of January make a report which shall be published " in some newspaper, and " which shall state the amount of capital, and of the proportion actually paid in, and the amount of its existing debts, which report shall be signed by the president, and a majority of its trustees, and shall be verified by the oath of the president or secretary of said company,

and filed in the office of the clerk of the county,     ※     ※     ※
and if any of said companies shall fail so to do, all the trustees of the company shall be jointly and severally liable, for all the debts of the company then existing, and for all that shall be contracted, before such report shall be made." Was anything done under this section? The trial judge finds as a fact "that on the 13th of January, 1870, said company made, filed, and published a report, of which the following is a copy." "We, George M. Wheeler, John A. Griswold, Chester Griswold, and C. D. Schubath, being trustees of the 'Iron Mountain Company, of Lake Champlain,' and a majority thereof, and the said George M. Wheeler being president of said company, do hereby certify and declare, that the capital stock of said company is two millions of dollars, that said capital stock has been paid up in full, and that the debts of said company amount to the sum of $375,000, four-fifths of which is mortgage bonds. Witness our hands this 13th day of January, 1870.

" The Iron Mountain Company, of Lake Champlain, by

" GEO. M. WHEELER, *Prest.*
" JOHN A. GRISWOLD,
" CHESTER GRISWOLD,
" C. D. SCHUBATH.

" Sworn to before me this 13th }
    " day of January, 1870.     }
        " CHAS. W. ANDERSON,
            " *Notary Public, N. Y. County.*"

If we place this report by the side of the statute above quoted, it is impossible to hold that it was not, in form at least, in compliance with its provisions. It was made by the company within twenty days from the first day of January; it was filed and published. In these respects there was literal obedience. The report states the capital stock of the company, and " that it has been paid up in full." This is equivalent to, if it is not literally, a statement of the proportion actually paid in. It is a representation to that effect,

and would be no stronger or more intelligible if it had used the very words of the statute.   To say that the capital stock has been paid up in full, is the same as saying that the capital has been paid in.   A person reading the report would naturally and necessarily conclude from it, that the proportion paid in was the full amount.   At this point it would seem therefore that the company had not failed "*to do*" as the statute required.   And this conclusion is reached by a strict interpretation of the report, and without giving to the defendants the benefit of any doubt as to its true sense and meaning.   Indeed this construction accords with the claim made by the learned counsel for the respondent, and appears to have been the view taken of the report by the Special and the General Terms.   Our attention is, however, directed by the learned counsel for the respondent to the act of 1853 (Laws of 1853, chap. 333), and to the finding of the Special Term in regard to matters pertinent thereto, and he urges that by reason thereof the report so made was false.   Assuming this to be so, does it bring upon the defendants the penalty imposed by the section (12) referred to ?   I think it does not.   *First.* It is not so declared by statute.   *Second.* The statute does contemplate the possibility of and provides a penalty for a false report.   Section fifteen (act of 1848, *supra*) enacts, that "if any report   *   *   *   made by the officers of any such company, in pursuance of the provisions of this act, shall be false in any material representation, all the officers who shall have signed the same, knowing it to be false, shall be jointly and severally liable for all the debts of the company contracted while they are stockholders or officers thereof."   There is then presented a very striking and obvious difference between the statute remedy and that insisted upon by the respondent as a consequence of a false report. The respondent says a false report is no report, and so in this action under section twelve, would enquire, not only whether the report was made, but whether it is true, and if not, would for that reason hold all the trustees liable, whether they signed the report or not.   On the other hand, the

statute treats the report as made, and in obedience to its command. The statute does not declare that if false, it shall be as no report, or annul it. It leaves the report in its place as part of the scheme or plan provided by statute, and imposes a penalty or punishment upon those who signed it, knowing it to be false, and upon no others. Not all, then, who signed the false report are liable therefor, but only those who sign it, knowing it to be false. As the statute makes this discrimination, the court cannot ignore it. To do so, we should make section twelve more severe than section fifteen, and apply it to cases which the latter would not include. Section twelve makes *all* the trustees liable for an omission on the part of the company to make a report. It need not be signed by all the trustees, but by a majority. In the case before us, Hoysradt, one of the appellants, did not sign the report. It was not necessary that he should. Yet according to the respondent's claim he is liable because it is false, although by section fifteen he could not be made liable, because he did not sign it. I cannot so construe the statute. In my opinion the statutory liability imposed by section twelve does not attach, if a report is made in terms complying with the statute, although some of the representations be untrue. I cannot imply a term into a statute, for the purpose of extending or imposing a penalty. If the Legislature has not used words sufficiently explicit to include all the cases which fall within the mischief intended to be prevented, the court is not competent to enlarge them. But in the case before us the Legislature has provided a penalty for a false report. The plaintiff, by appropriate allegations, sought to bring the defendants within its condemnation, but as before stated, failed to make out his case. In the statement of the cause of action upon which he did succeed, and which alone is to be regarded by us, there is an entire absence of any allegation that the report was false. It is averred that there was no report. The averment is sustained neither by the evidence nor the findings of the trial judge. When this case was before us upon a former appeal, there was no

occasion to determine whether a false report could be regarded as no report, and that question was not passed upon. The appeal went against the plaintiff upon other grounds. (*Bonnell* v. *Griswold,* 68 N. Y., 294.) But in *Whitney Arms Co.* v. *Barlow* (68 N. Y., 35), the question was presented and passed upon, and that decision, so directly in point, must be regarded as decisive of the case before us. There the action was against trustees for omitting to make a report under section twelve. It appeared that one had been made, and its sufficiency in form adjudged by this court. (63 N. Y., 62.) The plaintiff claimed, however, that it was untrue, and therefore a non-compliance with the requirements of the section. ALLEN, J., in considering that position says : " If this claim is well founded, the fact is not available to the plaintiff in this action. The suit is based upon the allegation of an omission to make, file and publish any report, not upon an allegation of the falsity of the report made."

The respondent however also seeks to sustain the judgment upon the theory of the trial term, viz. : " that the report was prohibited by the statute. (Chap. 40, Laws of 1848, § 12; as modified by chap. 333, Laws of 1853, § 2), and was not the report enjoined by the statute."

Section twelve has been already quoted. Section two of the act of 1853, provides that " the trustees of any such company may purchase mines   *   *   *   and other property necessary for their business, and issue stock to the amount of the value thereof, in payment therefor,   *   *   *   but in all statements and reports of the company to be published, this stock shall not be stated or reported as being issued for cash paid into the company, but shall be reported in this respect according to the fact." In this connection, should be considered the finding of the trial term, " that no part of the capital stock of the company was paid in cash, but the whole thereof was issued in payment for mining property, necessary for the company's business." The relation of this act of 1853, to the act of 1848, has been frequently con-

sidered in this court. It is as its title expressly states an amendment of that act. The stock issued in pursuance of it is included in the original capital stock of the company, as expressed in its certificate of incorporation, and is not in addition thereto. (*Schenck* v. *Andrews*, 46 N. Y., 589.) In this case the whole capital stock was $2,000,000, and it was all paid for by property. The report is otherwise, and in that respect it is false. Its effect in that character has been discussed, and it has I think no other. It is undoubtedly true that when a statute is amended, the original statute is thenceforward to be read as if it had been re-enacted, inserting in their appropriate places the amended provisions. But in this case, no especial section of the act of 1848, is amended, and section two of the act of 1853, is complete in itself, and makes no reference to any of the provisions of section twelve (*supra*). It cannot therefore be brought within its operation so as to affect one disobeying the provisions of section two, with the penalty prescribed by section twelve. We must take the statute (§ 12) as it is written, and not stretch it to cover cases obviously not embraced in its terms, because they may seem to be included in its policy. It is enough that section two of the act of 1853, is placed among the provisions of the act of 1848, and regarded as forming from the date of its passage, part thereof. It stands however as a distinct and independent section. For an omission to perform the duty enjoined by it, it imposes no penalty. Its language is directory, and if not obeyed a report made is false, and subjects the person making it, to the penalty prescribed by section fifteen, for that applies to any certificate or report made, and as I have before shown, the report in this case is false, because not conforming to the provision of the act of 1853. But the penalty declared by section twelve cannot apply. The language of that section is explicit and limited, explicit as to the things required, and its penalty limited to a neglect to do them. The company must state in its report : *First*. The amount of capital. *Second*. The proportion actually paid in. *Third*. The amount of its debts, etc., as

therein prescribed, and then declares that if the company "shall fail to do so," that is to make a report in the manner specified, and stating the facts singled out, the trustees shall pay, etc. The language is not, shall, under a penalty, make a report of such things as are required by law, but of these very things. At this time, 1848, nothing but money could be considered as payment of capital stock. (§ 14, Laws of 1848.) The act of 1853, permits under certain circumstances property to be received in payment, and directs that fact to be stated in the reports, but neither by direct language, nor by reference does it impose for its omission the penalty prescribed in section twelve. The court cannot do so, for that would violate the rule that a penal law shall not be extended by construction, and would substitute the discretion of a judge for the express authority of the law. These statutes have also received a legislative construction which sustains the view I have presented. The act of 1853 (*supra*) did not in terms amend section twelve of the act of 1848, but in 1871 (Laws of 1871, chap. 657, § 3) it was specifically amended, and again in 1875 (Laws of 1875, chap. 510), and the section was re-enacted so as to include the original section, except as altered by the amendment, and the amendments of 1871 and 1875, but without any reference to the act of 1853, or the terms of either section of that act. Nor was it repealed. It has since its enactment stood apart and separate from section twelve, as much so as it does now, after the amendment of 1875. In originally enacting the statute of 1853, and the subsequent amendments, the whole subject was in the mind of the Legislature, and the omission to refer to section twelve, or extend the penalty given by that act must be deemed intentional, and excludes the idea that the penalty imposed by section twelve was to be extended to the new case stated in the act of 1853. (*In re Rochester Water Commissioners*, 66 N. Y., 421.) The court cannot extend it by inference. They should on the contrary give to the statute a strict construction. (*Merchants Bank of New Haven* v. *Bliss*, 35 N. Y., 412; *Whitney Arms Co.* v. *Barlow*, 63

id., 62; 68 id., 34; *Wiles* v. *Suydam*, 64 id., 173; *Easterly* v. *Barber*, 65 id., 252.)

The verification of the report was sufficient. It was signed by the president; actually verified as the trial court has found, before a proper officer in the city and county of New York, and this also appears from the copy found in the appeal-book. The statute was complied with, and if the affiant swore falsely, he could be convicted of perjury.

No subsequent report was necessary. The company was adjudged a bankrupt in November, 1870, and on the 3rd day of January, 1871, the entire property of the company passed to the assignee in bankruptcy, and the company ceased to do business.

These views lead to a reversal of the judgment of the General and Special Terms, and render it unnecessary to discuss other questions which have been raised.

Judgments of General and Special Terms reversed, and new trial granted, with costs to abide the event.

CHURCH, Ch. J., and MILLER, J., concur; RAPALLO and ANDREWS, JJ., concur on first ground; FOLGER and EARL, JJ., dissent.

Judgment reversed.