SAMUEL BONNELL, JR., Respondent, v. CHESTER GRISWOLD, Impleaded, etc., Appellant.

ELI W. BLAKE, Respondent, v. Same Appellant.

Where, in an action against the trustees of a manufacturing corporation to enforce the liability imposed by the Manufacturing Act (§ 15, chap. 40, Laws of 1848), for the making of a false report, the sole falsity of the report alleged is in a statement that the capital stock has been paid up in full, without stating that all or a portion was paid for in property, as is required by the act of 1853 (Chap. 333, Laws of 1853), when such is the case, to sustain the action proof is necessary of some fact or circumstance indicating bad faith, a willful or fraudulent purpose on the part of defendants; the penalty follows an actual, not a constructive falsehood.

Where a referee's findings of fact are conflicting, the defeated party is entitled to the benefit of those most favorable to him, in aid of his exceptions to the conclusions of law.

(Argued April 14, 1882; decided May 2, 1882.)

APPEALS from judgments of the General Term of the Supreme Court, in the third judicial department, entered upon orders made September 20, 1881, which affirmed judgments in favor of plaintiffs, entered upon decisions of the court on trial at Special Term.

These actions were brought by plaintiffs as judgment creditors of the Iron Mountain Company of Lake Champlain, a cor-

poration organized under the General Manufacturing Act (Chap. 40, Laws of 1848), against defendants, as trustees of said corporation, to recover certain debts of the company : First. Because of an alleged omission of the company to make and file the annual report required by that act (§ 12) in January, 1870. Second. Because of the making and filing of a false report. Third. Because of an alleged conspiracy on the part of the defendants and the organization of the company in pursuance thereof for fraudulent purposes and the making of said report to deceive the public and plaintiffs, whereby plaintiffs were deceived and induced to give the credit.

The case first entitled has been reported on former appeals in 68 N. Y. 294, and in 80 id. 128.

A report for January, 1870, was made and filed certifying as follows : " That the capital stock of said company is two millions of dollars, that said capital stock has been paid up in full." No part of the capital stock was paid in cash, but was claimed to have been issued in payment for property.

The further material facts are stated in the opinion.

*Wm. C. Holbrook* for appellant. The report was not such a false report as would render defendant liable under section 15, chapter 40, Laws of 1848. (*Cliquot's Champagne,* 3 Wall. 114 ; *Verona Central Cheese Co.* v. *Murtaugh,* 50 N. Y. 314 ; *Earl of Beauchamp* v. *Winn. S. G.,* Eng. & Sc. App., 6 H. of L. 223–34 ; Arnould on Insurance, §§ 182, 199.) To render defendant liable as for an over-valuation it was incumbent on plaintiff to prove that he with the other trustees deliberately and with knowledge of the real value of the property over-valued it, and paid stock for it in an amount which they knew was in excess of its actual value. (*Douglass* v. *Ireland,* 73 N. Y. 100 ; *Brockway* v. *Ireland,* 61 How. Pr. 372 ; *Schenck* v. *Andrews,* 46 N. Y. 589 ; *S. C.,* 57 id. 133 ; *Boynton* v. *Hatch,* 47 id. 225 ; *Boynton* v. *Andrews,* 63 id. 93.) Where findings of fact conflict, the defeated party is entitled to those most favorable to him in aid of exceptions to conclusions of law. (*Schwinger* v. *Raymond and ors.,* 83 N. Y. 192–9 ; *Corbin* v. *Gordon,* 12 Weekly Dig. 570–1.)

*Samuel Hand* for respondent. The report of 1870, signed by the defendant Griswold, was a false report within section 15 of the act of 1848, to his knowledge, because it stated that the capital stock had been paid up in full, instead of stating, that the stock had been all issued in payment of mines, etc., conveyed to it. (Laws of 1848, p. 57, § 15; Laws of 1853, p. 705, § 2; 3 Stat. at Large, 736, § 15; *Bonnell* v. *Wheeler,* 80 N. Y. 128. And see *Pier* v. *George,* 20 Hun, 210; *Waters* v. *Quimby,* 27 N. J. L. 198, 296; *Quimby* v. *Waters,* 28 id. 533; *People* v. *Contracting Board,* 27 N. Y. 378; *Comm.* v. *Wyman,* 8 Metc. 247.) The stock to the extent of $1,400,000 being illegal to the knowledge of the defendant when he signed the report, he is liable for making such false report. (*Boynton* v. *Hatch,* 47 N. Y. 225; *Boynton* v. *Andrews,* 63 id. 100; *Douglass* v. *Ireland,* 73 id. 100; *Waters* v. *Quimby,* 27 N. J. L. 198, 296; *Quimby* v. *Waters,* 28 id. 533.) The report having been made with knowledge of the facts, it was intentionally false within the statute. (*Van Ingen* v. *Whitman,* 62 N. Y. 513, 518, 519, 520; *Gardner* v. *People,* id. 299; *Fielder* v. *Darrin,* 50 id. 438; 7 Wait's Act. and Def. 603; *Quimby* v. *Waters,* 28 N. J. L. 533, 537; *People* v. *Brooks,* 1 Denio, 457; *Clark* v. *Miller,* 54 N. Y. 528, 534; Broom's Legal Maxims, 255; *People* v. *Brooks,* 1 Denio, 457, 458; *People* v. *Bogart,* 3 Park. 143, 173; *Upton* v. *Tribilcock,* 1 Otto, 45, 50, 51; *Marsh* v. *Falker,* 40 N. Y. 562; *Chester* v. *Comstock,* id. 575; *Meyer* v. *Amidon,* 45 id. 169; *Bennett* v. *Judson,* 21 id. 240.)

FINCH, J. The right of recovery in these actions was put by the pleadings upon three grounds. It was alleged, first, that no report as required by law had been made by the Iron Mountain Company; second, that what was claimed to have been such report was false in a material representation; and, third, that the organization of the company was a fraudulent conspiracy designed to deceive and defraud the public. The first cause of action was not sustained. The report, whether

true or false, was a compliance with so much of the law as required it to be made. This point was settled on a previous appeal. (80 N. Y. 128.) The third cause of action, founded upon an alleged conspiracy, was defeated by an adverse finding upon the facts by the trial court. That court, however, permitted a recovery upon the second cause of action, under section 15 of the act of 1848, on the ground that the report was false in a material representation, in that it did not state the amount or proportion of capital stock, issued for property, according to the fact, and was known to the defendant to be so false at the time it was made. The recent case in this court of *Pier* v. *Hanmore* (86 N. Y. 95) enables us to say without further discussion that the report in this case contained an untrue representation as to the amount of capital paid in, and that such representation was material. The report stated that the capital stock of the company was two millions of dollars and had been "paid up in full." We held that such a representation in the report imported that the capital had been paid in cash, where it was not specified that the whole or some part had been paid in property.

But in this case, as in the one referred to, the important question is left, whether the defendant signed the report "knowing it to be false," within the meaning of the statute. In both cases the signers of the report knew it to be false, in the sense that they knew that the whole capital had not been paid in, in cash. But in *Pier* v. *Hanmore* we required something more than that, and declared the rule to be that "to charge the officer with the severe penalty imposed for signing a false report knowing it to be false, some fact or circumstance must be shown indicating that it was made in bad faith, willfully, or for some fraudulent purpose, and not ignorantly or inadvertently, and this is a question of fact which must be passed upon before the liability can be adjudged." But the necessity of such proof of a willful and fraudulent purpose we confined to a case where the sole falsity of the report originated in our construction of its import, as meaning a payment in cash, although not so stated in express terms, and where, as a conse-

quence, it was possible for the officer to have signed what we construe to be a falsehood, but what, as he understood it, might have been a truth. In such a case it is just to require that some evidence of bad faith, something indicating a consciousness of falsehood instead of a belief of truth, should be given. In other words, the penalty follows an actual and not a constructive falsehood ; one known and understood to be such and not possibly believed to be otherwise.

So far then as the liability of the present defendant is claimed to attach by reason of the constructive falsehood of his report, as importing full payment *in cash,* it was necessary for the plaintiff to show bad faith and an intent to deceive. No such fact was found. On the contrary, the trial court have made an express finding that in signing the report " the defendant did *not* act in bad faith," and " had no intention thereby of deceiving or defrauding the plaintiff or any other person." In the face of this finding it was impossible for the trial court to hold the defendant liable, because he knew that the capital was paid in property and not in cash. If the penalty was incurred we must find its justification elsewhere.

It is argued that such justification exists in the fact claimed to be proven, that the defendant knew that the capital, although paid in property, was not *fully* paid up, for the reason that he knew it to be actually worth not to exceed $600,000 ; that he knew that the Kingdom company, which was the vendor of the property purchased through the intermediate agency of Remington, received as consideration of the sale only one-half of the capital stock of the Iron Mountain Company, or one million of stock instead of two millions ; and that he knew that the remainder in the hands of Remington was partly given away to its stockholders, transferred as commissions for obtaining a loan, and used as so much working capital. These facts certainly tend to the result asserted, but we are again embarrassed by the findings of the trial court which seem to be contradictory. It is found that the defendant was informed by parties of skill and experience, and having the necessary knowledge, that the property bought of the Kingdom company

was very valuable, and that two millions of dollars was not a large valuation to put upon it, which statements the defendant fully believed to be true ; and it is further and expressly found that "the defendant did not know," outside of its not having been paid in cash, "that the entire capital stock of said company had not been paid up in full, or that the property for which said capital stock was issued was not of the value of two millions of dollars." The qualification appended to this finding does not change its force and effect. But there are findings to the exact contrary. In one of them it is stated that the trustees of the Iron Mountain Company, of whom the defendant was one, "valued the property at less than the capital; " and in the first two additional findings it is certified to us as true that the value of the property purchased was not more than $600,000 and the defendant knew it, and that so much of the stock as was issued in excess of that value was illegally issued. We have to deal with these contradictions. In so doing we must follow the rule we have declared, that where the findings are contradictory those must be applied which are most favorable to the defeated party in aid of his exceptions. (*Schwinger* v. *Raymond*, 83 N. Y. 192 ; 38 Am. Rep. 415.) In so doing, we must take as a fact that there was no over-valuation of the property of which the defendant had knowledge, and that he did not know that the capital stock was not paid up in full. Such a conclusion upon the evidence it was possible to reach, and what we think about it, therefore, is immaterial. Taking that as a fact we must disregard the findings which are inconsistent with it.

In this view of the case the judgment was wrong unless we can sustain it upon the theory of a fraudulent conspiracy in the original organization of the Iron Mountain Company. Here again we are met with the difficulty that the question is one of fact and has been found in favor of the defendant. It is expressly found that no fraud was established, and that the third cause of action was not proved. And even in the additional findings, where the mode of organization and the defendant's connection with it was stated in detail, it is added

that he relied upon the representations of the other parties having knowledge superior to his, and did what he was asked to do as a matter of form, having " no positive opinion or belief " of his own.

It appears to us, therefore, that there has been a mis-trial, and a result reached which we cannot sustain upon the facts certified to us to be true.   We can see no ground upon which we can affirm the judgment which does not involve a contradiction of one or more of the findings of fact made by the trial court.

The judgment must be reversed and a new trial granted, costs to abide the event.

All concur.

Judgment reversed.