ELMER J. ALBERT, Respondent, *v.* ELNATHAN SWEET, Jr., et al., Appellants.

Defendants were contractors engaged in the construction of a section of the road of the N. Y., W. S. & B. R. R. Co. They were in the habit of making up a construction train at a point where said road crossed at grade the tracks of the A. & S. R. R. Co., and had authority from the lessee of the latter road to cross it. In making up such a train the rear car, which was not coupled to the one preceding it, was backed so that the rear end projected over the track of the A. & S. road, and was left in that position when the train moved forward. A freight train, drawn by an engine in charge of plaintiff, came in collision with said car before defendant's employes, after the engine came in sight, could remove the car from the track. Plaintiff, in apprehension of damage from the collision, jumped from his engine and was injured. In an action to recover damages it appeared, and was found, that the freight train was running on special orders that morning, about sixteen minutes ahead of schedule time, of which change defendants had no notice; that if it had been running according to the time table with which defendants had been furnished, and which had been for six months prior to the accident observed in running the train, the collision would not have occurred, as the projecting

car would have been removed. *Held,* that a refusal to nonsuit was no error; that although the fact that defendants were not notified of the change of time in running the freight train would have had an essential bearing upon the question of negligence, if the collision had occurred while they were making a legitimate use of the crossing, it had no bearing here, as they had no occasion to cross the track at the time, and the situation producing the injury was caused by the want of care of their employes.

The referee found that when defendants' employes saw the freight train approaching one of them ran towards it, hallooing and swinging his hat for the distance of two hundred yards from the crossing where he was first seen by plaintiff, who made no effort to stop the train until within two hundred and fifty feet from the crossing; he, however, also found, from evidence justifying it, that when plaintiff first saw the man sent out to signal him he, for the first time, saw the obstruction, and that he then blew the whistle for application of the brakes, reversed his engine and endeavored to stop. His train was moving at the rate of about fifteen miles an hour. *Held,* that the fair meaning of the findings was that he promptly applied the means at his command to stop the train; that the findings were not inconsistent, and that it could not, as matter of law, be held that plaintiff was guilty of contributory negligence; but that the question was one of fact.

Plaintiff, as a witness in his own behalf, and the conductor of the train, were permitted to testify, under objection and exception, that there was no requirement to stop at N. S., the station where the accident happened, that morning. *Held,* no error; that as the special order upon which the train was run did not permit them to observe the schedule time of reaching and leaving stations, the time table was, in that respect, superseded by the order, and the witnesses' relation to the business enabled them to give a construction to such order.

(Argued October 8, 1889; decided October 22, 1889.)

APPEAL from judgment of the General Term of the Supreme Court in the third judicial department, entered upon an order made at the December Term, 1886, which affirmed a judgment in favor of plaintiff, entered upon the report of a referee.

This action was brought to recover damages for personal injuries to plaintiff alleged to have been caused by defendants' negligence.

The material facts are stated in the opinion.

*Edward Winslow Paige* for appellants. Upon the facts found by the referee the plaintiff was guilty of contributory

negligence, as matter of law, as he did not attempt to stop as soon as he saw the man signaling him. (*Schwier* v. *N. Y. C. & H. R. R. R. Co.*, 90 N. Y. 558, 561.) From the facts found by the referee the inference of fact that plaintiff was guilty of contributory negligence is a necessary inference. (1 Wood's Ry. Law, 680, 681; *L. S. R. R. Co.* v. *C. R. R. Co.*, 30 Ohio St. 604; *In re L. & B. R. R. Co.*, 19 Hun, 38, 42.) Defendants' employes were not negligent. (*Slater* v. *Jewett*, 85 N. Y. 71; 2 Wood's Ry. Law, 1174–1177, and notes; 2 Redfield's Law of Ry. [5th ed.] § 197.)

*Amasa J. Parker, Jr.*, for respondent. Where by the affirmative action of the defendant the plaintiff is placed in great peril of his life, the ordinary rules of contributory negligence do not apply. (*Lowery* v. *Manhattan Co.*, 99 N. Y. 158; *Volk* v. *N. C. R. Co.*, 75 id. 321; *Dyer* v. *Erie Co.*, 71 id. 228; *Twomley* v. *E. P. N. Co.*, 69 id. 158; *Cuyler* v. *Decker*, 20 Hun, 174; *Roll* v. *Northern Co.*, 15 id. 496.) Where a train runs out of time without a good excuse, a passenger who suffers damages may claim to be reimbursed because the published time table and his ticket constitute a contract to carry on time. (*Sears* v. *Eastern Co.*, 14 Allen, 433, 436; 2 Wood's Railroad Law, 132–137, 1174; *Salter* v. *Utica Co.*, 75 N. Y. 273.)

BRADLEY, J. The plaintiff, a locomotive engineer, while engaged as such in the service of the Delaware & Hudson Canal Company, on the road operated by it, and known as the Albany & Susquehanna Railroad, received a personal injury. He charges that such injury was occasioned wholly by the negligence of the defendants, and such was the determination of the referee. The defendants were engaged in the construction of a portion of the New York, West Shore & Buffalo Railroad, and for some time prior and up to May 14, 1883, they had been in the habit, on the morning of each day, of making up a construction train on the latter road at New Scotland, at which place there was a grade crossing of the two roads. The course of the Albany & Susquehanna Railroad

was easterly and westerly, and that of the other northerly and southerly. On the morning of that day the defendants' servants were proceeding to make up such a train from cars standing on a switch, and on the main track of the New York, West Shore & Buffalo Railroad, on the south side of the Albany & Susquehanna Railroad, at that place, to go south, and for that purpose some cars were, by an engine, drawn from the switch on to the main track, and then backed up to and against two or three cars standing on that track for the purpose of adding them to the train. The force of the contact, so produced, was such as to move the standing cars back so as to place the end of the rear one over the track of the Albany & Susquehanna Railroad at the crossing, and when the ends of the two sections were coupled, and the engine put in motion to draw them forward, it was observed that the rear car was not coupled to the one that preceded it. And it remained so projecting over the track. Just then the freight train, drawn by the engine in charge of the plaintiff, came into view, and was seen about half a mile west of the crossing, on its way east on the Albany & Susquehanna Railroad, and came in collision with it before the defendants' employes had time to remove the projecting car from the track. The plaintiff, in apprehension of damage, jumped from the engine and received the injuries complained of. The conclusion of the referee was warranted that the defendants were chargeable with negligence, through the act of their servants in shoving the rear car, uncoupled as it was, back over the track of the Albany & Susquehanna Railroad, and thus giving opportunity for the collision which occurred. The fault was in failing to observe that it was not so connected with the other cars as to be drawn out by the engine, or in not in some manner staying it from going on to the crossing. It, very likely, was supposed by the persons making up the train that the cars were coupled, but that belief was founded neither upon knowledge or examination to ascertain the situation in that respect. But it is urged that such want of care should not charge the defendants with liability as for negligence, because there was no occasion to apprehend

the arrival of a train before they would be able to remove
the car from the crossing. It is true that if the movement
and time of arrival of the plaintiff's train, had been governed
by the time table, which for the then last six months had
been observed in running it, the collision would not have
occurred, as the projecting car would have been removed
several minutes before the approach of the train at that
station, and there was no other train due there in the mean-
time. The defendants, in the performance of their work
of construction, had the right to use the crossing for the
purpose of running their engines and trains of cars over it
upon the New York West Shore & Buffalo Railroad, and they
had been furnished with a time card of the other road. The
plaintiff's train, at the time in question, arrived there about six-
teen minutes in advance of the time its arrival was permitted
by such schedule time and about twenty minutes before the
leaving time prescribed by it for his train. It appears that the
plaintiff was permitted to disregard such schedule time in run-
ning the train that morning by a special order, which directed
him and the conductor to run to Albany in advance of time.
This accounts for the arrival of the train so early that morning
at New Scotland. The defendants had not, nor had their
employes, been advised of this special order. The Delaware &
Hudson Canal Company had the right to make such special
order, and to cause the train to be run on the time made by it
that morning, although the fact that the defendants were not
advised of such order, may have had an essential bearing upon
the question of negligence of the defendants, if the collision
had occurred while they were making a legitimate use of the
crossing. But that view cannot now be claimed as they had
no occasion then to cross the track, and the situation which
produced the injury was caused by the want of care of the
defendants' employes. It is, however, contended by the
defendants' counsel, that the plaintiff was guilty of contribu-
tory negligence in not observing the rules of his company
relating to the running of trains, in not approaching the
station with the requisite caution, and in failing to observe,

in time to stop his train, the signal which the defendants' employes sought to give him of the danger. The rules provided that the speed of freight trains should not exceed eighteen miles per hour, that the engineers should keep a good look-out, and approach and pass all stations cautiously, whether they were to stop or not. The engineer did not intend to stop at this station. His train was moving fifteen miles per hour. The defendants' employes used no flag on the occasion, but when they observed the approach of the train they sent a man out to signal the engineer to stop, and he, for that purpose, ran towards the train hallooing and swinging his hat, for the distance of two hundred yards from the crossing, as the referee has found, when he was first seen by the engineer. The referee, on defendants' request, also found that the plaintiff made no effort to stop the train until within two hundred and fifty feet from the crossing. These two facts, unqualified by any other fact found within the evidence, would present 'some difficulty in the way of the plaintiff's recovery. For if, when two hundred yards from the crossing, his attention was called to the signal given to stop, and he did nothing to retard the motion of the train until within two hundred and fifty feet of the crossing, it is difficult to relieve him from the imputation of contributory negligence. So far as there was a substantial discrepancy in the facts as found by the referee, the defendants are entitled to the adoption of the one the more favorable to them. (*Bonnell* v. *Griswold* 89 N. Y. 122.) But the fact is found by the referee, and such finding has the support of evidence, that when the plaintiff first saw the man sent out to signal him, he then, for the first, saw the car projecting over the track, and that he *then* blew the whistle for application of the brakes, reversed his engine and endeavored to stop. The important fact in this particular respect is not how far distant from the crossing his attention was first called to the signal, but whether he promptly and diligently sought to stop the train when he saw the signal; and we think the fair meaning of the findings, as a whole, is that he promptly applied the means at his command

to stop the train, and that the findings in that particular respect are not inconsistent. The summit on which the train came in view at the crossing, was three-fourths of a mile from it, and between the two points the track of the road was straight. The time in question was a bright clear morning. The plaintiff could see the line of the rail all the way to the crossing. There was no flag at the latter place to call his attention to any danger there. He testified, and the referee found, that the plaintiff was in his proper place on the right hand side of the cab on his engine; that he looked forward along the track, as he came over the hill, and saw no signal or obstruction on the track until his attention was called to the man, who was sent forward waving his hat. The duty imposed upon the plaintiff by the rules of the company required him to approach this station cautiously, and this duty was rendered more imperative by the fact that there was a crossing near the station over which trains were liable to pass on the New York, West Shore & Buffalo Railroad, the right to do which, it may be assumed was equal to that on the other road. It cannot, as matter of law, be held that the plaintiff failed in that respect to perform his duty. There is no specific finding on that subject further than has been already referred to, but he testifies that he looked all the way from the top of the hill; that "the rails were bright and it looked all clear away above the crossing," and that he continued to look and saw nothing out of the way until within two hundred and fifty feet of the crossing. It may be observed that the car was a flat one, that its trucks were outside of, and the end only projected over the south rail a short distance beyond and inside of it. This car may not, therefore, have been at a distance as conspicuous an obstruction as a box car would have been, and may not have interrupted the view of the track as it would if some of the trucks had been between the rails. The fact that the brakemen were not at their places on the train, so far as the plaintiff was so advised, was some reason for him to endeavor to keep the train within

reasonable control in approaching the crossing. On that subject the plaintiff testified that when he came over the top of the grade, three-fourths of a mile from the crossing, he shut off steam "so that the train would drag along over," and left it so until he saw the signal man, when he reversed and gave steam in support of the reverse motion. From the summit it was descending grade at the rate of thirty-five feet to the mile until within about four hundred feet of the crossing, when the ascending grade was about the same. Upon the evidence the question of contributory negligence of the plaintiff was clearly one of fact for the referee to determine. The distance within which the train could at that time and place have been stopped, was a subject not very definitely established by the evidence. There was not much time occupied in running from the summit to the crossing. At the rate of fifteen miles per hour the train would move a half a mile in two minutes, and six hundred feet in less than a half of one minute. The finding of the referee that the plaintiff was not guilty of contributory negligence is not, we think, inconsistent with the specific findings as a whole, and must, for the purpose of this review, be deemed conclusive. "Was there any requirement to stop at New Scotland that A. M. ?" was a question put to the plaintiff and to the conductor of the train and answered by them, respectively, in the negative. And the referee found that there was no requirement to stop the train there that morning. The defendants' counsel contends that his exception to the reception of that evidence was well taken. The importance of that evidence has relation only to the question of negligence of the plaintiff. If he was required by the rules of his company to stop this train at the station, his failure to perform his duty in that respect was properly the subject for consideration upon that question. The effect of the evidence so given was that as both the conductor, having charge of the running of the train, and the plaintiff understood it, there was no requirement to stop the train at that station. The special order upon which the train was run did not enable them to observe the schedule time of reaching and leaving stations. The time table, there-

fore, in that respect was overcome or superseded by it. This conductor and engineer had for considerable time been in the service of the company. And their relation to the business of running the train, in view of the presumption of their knowledge of its practice in that respect, would seem to qualify and enable them to give a construction to the order and the effect of it as a direction to them, by stating whether or not in running upon it they were required to stop at the station. It may be said that this train was run by the special order, and that the time table was inoperative for the purpose of running it from Quaker street, where the order was received, to Albany; and it may be assumed that the conductor and engineer were able to state its effect in that respect. This was fairly involved in the inquiry, and although it may have been more direct and specific in its call for the fact, the criticism of the question and answer, is more formal than substantial. None of the exceptions seem to have been well taken

The judgment should be affirmed.

All concur.

Judgment affirmed.