CHARLES W. VAN VLEET, Plaintiff, *v.* W. MARTIN JONES, Defendant.

*Stockholder's liability — overvaluation of property for which stock of a corporation is issued in payment — false certificate — evidence — chapter 40 of the Laws of 1848.*

In an action brought to recover the debt of a corporation from a stockholder thereof under the provisions of sections 10, 11 and 15 of chapter 40 of the Laws of 1848, and the acts amendatory thereof, the acts of the original incorporators of the corporation must be fairly considered, and the statute under which they acted be given a reasonable interpretation.

Upon the trial of such an action evidence was given from which it appeared that the stock of the corporation was nearly worthless, and had been purchased for five cents on the dollar. The court refused to allow the plaintiff to prove a statement of the defendant, made at the time of such purchase, that such stock was absolutely worthless.

*Held,* that the error committed was not of sufficient importance to require a new trial.

It is natural that the owners of property taken by a corporation of which they are stockholders, and in payment for which stock of the corporation is to be issued, should desire to realize for their property all that it is worth, and the statute is not violated in respect to the issuing of stock in payment for property, unless such persons in bad faith put a fictitious value upon their property for the purpose of evading the statute and defrauding others.

MOTION by the plaintiff, Charles W. Van Vleet, for a new trial on a case containing exceptions, ordered to be heard at the General

Term in the first instance, after a judgment of nonsuit rendered at the Monroe County Circuit on the 22d day of February, 1893.

*Arthur E. Sutherland*, for the plaintiff.

*W. Martin Jones*, defendant, in person.

HAIGHT, J. :

This action was brought by the plaintiff as a creditor of the Rochester Lithographing and Printing Company, a corporation organized under chapter 40 of the Laws of 1848 and the several acts amendatory thereof, to recover the amount of his debt from the defendant as one of the officers and directors of such corporation, by reason of an alleged false certificate made by him, as such officer, under the statute. The certificate is as follows :

" We, the undersigned stockholders and directors of the Rochester Lithographing & Printing Company, do hereby certify that the capital stock of the said The Rochester Lithographing & Printing Company is and was fixed at $50,000, and that the same is now fully paid up ; that the last and final payment of the capital stock of said company, being the sum of $1,800.00 due from one of the members of said company, was paid into the treasury of said company on the First day of April, 1889, and that there now remains due and owing to said company upon said capital stock from the stockholders thereof no sum whatever.

" Dated, ROCHESTER, N. Y., *April 27th*, 1889."

The certificate is signed by the defendant and four other directors of the corporation, and an affidavit is attached in which they swear that the certificate is true. The defendant was the president of the corporation. The statute referred to, among other things, provides :

" Section 10. All the stockholders of every company incorporated under this act shall be severally, individually liable to the creditors of the company in which they are stockholders to an amount equal to the amount of stock held by them respectively for all debts and contracts made by such company, until the whole amount of capital stock fixed and limited by such company shall have been paid in, and a certificate thereof shall have been made and recorded as prescribed in the following section. And the capital stock so fixed and limited shall be paid in, one-half thereof within one year

and the other half thereof within two years from the incorporation of said company, or such corporation shall be dissolved."

"Section 11. The president and a majority of the trustees, within thirty days after the payment of the last installment of the capital stock so fixed and limited by the company, shall make a certificate stating the amount of the capital so fixed and paid in, which certificate shall be signed and sworn to by the president and a majority of the trustees, and they shall, within said thirty days, record ·the same in the office of the county clerk of the county wherein the business of the said company is carried on." ·

"Section 15. If any certificate or report made, or public notice given by the officers of any such company in pursuance of the provisions of this act, shall be false in any material representation, all the officers who shall have signed the same, knowing it to be false, shall be jointly and severally liable for all of the debts of the company contracted while they are stockholders or officers thereof."

It is claimed that the certificate is false, for the reason that at the time the corporation was organized the capital stock was issued for property not worth an amount equal to the par value of the stock issued, and that subsequently a stock dividend of fifteen per cent was made.

The corporation was organized on the 5th day of May, 1887. The plaintiff and five other men were the original incorporators. At that time stock to the amount of 275 shares was subscribed for. It appears that the printing establishment owned by the firm of Goble & Bredenburg, with the lithographing establishment owned· by the firm of Willard, Pitt & More, were united, and the plants of the two concerns were transferred to the corporation. The printing establishment was put into the corporation at $11,000, subject to an indebtedness of $1,000, and $10,000 of the stock of the corporation was issued to Messrs. Goble & Bredenburg, each taking fifty shares in payment therefor. The lithographing plant was put into the corporation at $36,130.29, subject to an indebtedness of $25,130.29, and the stock of the corporation was issued to Mr. Pitt, who had become the owner of the interest of Willard and More therein, for the balance, $11,000.

The corporation so organized entered upon the transaction of business, and continued for the space of about six months, at which

time it declared a dividend of fifteen per cent, and the same was paid to the stockholders in the capital stock of the company. Subsequently, and on the 7th day of February, 1888, the president of the corporation transferred the stock belonging to him to the defendant, who was thereupon elected its president. It further appears that in June following the company became embarrassed, and several suits were brought against it upon claims which had matured; that thereupon the defendant purchased the outstanding stock held by the stockholders for five cents on the dollar of its par value, and then took the remaining stock which had not been previously issued, paying par therefor, amounting to the sum of about $12,000, and with this additional capital carried on the business of the corporation until its failure in October, 1890.

It further appears that after the owners of the two plants had agreed upon the uniting of them in one business, the defendant was called in as attorney for the parties, and directed to prepare the necessary papers for forming the corporation. That whilst he thus became informed of the details of the agreement made by the owners of the plants, it is not claimed that he then had any knowledge of the value of the property so put into the corporation, or that it was put in by the owners at an overvaluation thereof; but it is claimed that in June, 1888, the time of the financial embarrassment of the corporation, that he then became aware of the fact that the property of the firms had been overvalued in putting it into the corporation. The plaintiff's evidence upon this branch of the case was chiefly given by the witness Pitt, who was one of the original incorporators and the manager of the company. His testimony is to the effect that the printing establishment was overvalued in the sum of $4,000, and the lithographing company was overvalued in the sum of $5,000. He, however, states that, at the time of the forming of the corporation, the lithographing company was actively engaged in carrying on that business, and the same was regarded by them as flourishing; that the printing establishment was also actively engaged in carrying on its business, and that it was regarded as a successful printing establishment. That they regarded what is commonly known as the good will of the establishments valuable, independent of their property interests; that the property of the two concerns was put into the

corporation at its original cost value, estimating that the good will of the business would make up for the depreciation in the value of the property by its use. None of the other incorporators were called as witnesses upon this question. The only evidence tending . to show that the plaintiff knew about this, appears from the testimony of Pitt as to a conversation he had with the defendant at the time of the financial embarrassment of the company in June, 1888, and is as follows : " Mr. Jones said that he had come into the company on my representations, and he believed that I had deceived him in regard to the stock dividend, and he asked me the price paid for a particular press. He said : ' You told me that the company had declared a stock dividend of fifteen per cent and had earned it.' I don't think I said anything in reply. I wasn't talking at that time. I believe he also asked me where I got the price of the Potter press; one of our large presses in the lithographing room. I told him I made the inventory from an invoice we had. That is all I remember that was said at that time on the subject of the property. He criticised the exchange of some notes of the Lithographing Company for those of C. M. Green, of Fairport. That was about my management of the company. Mr. Jones, in a general way, criticised me about the property which was originally taken by the company for stock. I cannot tell what he said. The substance of what he said in those general criticisms was, that he claimed I had deceived him in regard to the value of the property and of the value of the plant ; speaking in general terms, that I had deceived him as to the value of the plant in inducing him to come in and telling him that we had made a stock dividend of fifteen per cent. He said that I had overestimated, or overvalued the property in putting it in there, in making up the stock company."

It is upon this evidence that the plaintiff seeks to establish the fact that the defendant, in certifying that the stock of the corporation had been fully paid in, certified to that which he knew to be false. Let us consider the circumstances under which this conversation took place. In February preceding, the defendant had been induced to purchase a block of stock and to accept the presidency of the corporation. Its business at that time had been represented as flourishing. and that a fifteen per cent dividend had been earned and paid ; in June following he found the company in finan-

cial embarrassment, unable to pay its maturing obligations, with several suits on hand. Under these circumstances he was complaining to the witness, who was the person who had induced him to join the company. He made inquiry in reference to the value of certain presses, and questioned him as to the truthfulness of his representation as to the dividend. Complained of his conduct as manager in exchanging notes of the company for those of C. M. Green; criticised him in a general way in his conduct of the business, and accused him of overestimating the value of the property put into the company. Is this sufficient to sustain a finding of willful false swearing? Did the defendant then know that the incorporators intentionally evaded the statute, and perpetrated a fraud upon those who should afterwards become creditors of the corporation? Let us follow him further. He, at this time, takes a transfer to himself of all the stock of the other stockholders, paying them five dollars a share therefor. He thus assumes all of the liability of the corporation; he then pays into the treasury $12,000, or thereabouts, in cash, taking up the unissued stock, and after taking into the corporation some of his friends, made the certificate in question required by the statute, and proceeded with this business. Would he have done this had he known that the incorporation was fraudulent from the beginning? Under the statute the capital stock has to be paid in within two years from the incorporation, if not, the statute provides that the corporation shall be dissolved. The two years were nearly up; the books showed the stock to be full paid. It was full paid, unless the original incorporators had fraudulently overvalued the property put in by them. We are not satisfied that he knew that this was done. Such knowledge is not consistent with his subsequent action. The acts of the incorporators must be fairly considered, and the statute under which they acted given a reasonable interpretation. The owners of the printing business might have thought the same to be worth more than it really was, and the same may have been true as to the owners of the lithographing establishment. It was natural that they should want to realize for their property all that it was worth; they had the right to demand and receive this; they did not violate the statute unless they, in bad faith, put a fictitious value upon their property for the purpose of

evading the statute and defrauding others, and the defendant is not liable unless he knew of such misconduct on their part. (*Whitney Arms Co.* v. *Barlow*, 63 N. Y. 62; *Pier* v. *Hanmore*, 86 id. 95; *Bonnell* v. *Griswold*, 89 id. 122; *Whitaker* v. *Masterton*, 106 id. 277–281.)

Upon the trial the plaintiff asked the witness Pitt if the defendant said anything to him in June, 1888, at the time of his purchase of the stock, about the value of the stock. This was objected to by the defendant, and thereupon the plaintiff offered to show that the defendant stated that the stock was absolutely worthless. The objection was sustained and an exception was taken by the plaintiff. We think the evidence might have been properly admitted, but do not consider its exclusion such an error as requires a new trial. The conversation called for was at the time the defendant was purchasing the stock of the other stockholders. It appears that he purchased their stock, paying five cents on the dollar therefor. It thus appears from the transaction itself that the stock was nearly worthless, and if in that connection he made the statement that it was absolutely worthless, it would not operate to change our view of the case. In that connection the trial judge made a statement to the effect that he should hold that the knowledge of the defendant in June, 1888, of the intentional overvaluation by the incorporators was not a material fact in the case. This view we do not wish to be understood as indorsing.

As to the fifteen per cent dividend, it appears from the testimony that it had been earned, and the books of the company so show.

Whether the plaintiff was misled by the certificate, or is estopped from claiming that there was an overvaluation by reason of his being one of the original incorporators, we do not deem it necessary to consider.

The motion for a new trial should be denied, with costs and judgment ordered for the defendant upon the nonsuit.

DWIGHT, P. J., and LEWIS, J., concurred.

Plaintiff's motion for a new trial denied, with costs and judgment ordered for the defendant upon the nonsuit.